PLANNED PARENTHOOD OF SOUTH-
ERN ARIZONA AND ITS CORPO-
RATE CHAPTER, ARIZONA WOM-
EN'S CLINIC, INC., Planned Parent-
hood of Central and Northern Arizona,
Inc., and Dr. David Rhae, M.D., and Dr.
Maryanna Friederich, M.D. individual-
ly and on behalf of their minor pa-
tients, Plaintiffs,

v.

Stephen D. NEELY, as County Attorney
for the County of Pima, and as repre-
sentative for county attorneys and oth-
er prosecuting attorneys similarly situ-
ated throughout the State of Arizona,
including without limitation city attor-
neys, Defendants.

No. CIV 89–489 TUC ACM.

United States District Court,
D. Arizona.

Sept. 14, 1992.

Susan Ferrell, Stompoly & Stroud, P.C.,
Tucson, Ariz., for plaintiffs.

Christopher L. Straub, Deputy County
Atty., Tucson, Ariz., for defendants.

## ORDER

MARQUEZ, Senior District Judge.

### INTRODUCTION

Plaintiffs originally brought this civil rights and declaratory action pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983, the United States Constitution and the Arizona Constitution, challenging Arizona Revised Statutes § 36–2152 and § 36–2153 on their face and seeking declaratory judgment that the statutes are unconstitutional and permanent injunctive relief against the enforcement of said statutes.

Defendant Stephen D. Neely filed a Motion to Dismiss for Lack of Prosecution and Motion for Judgment on the Pleadings on July 8, 1992, asserting that Arizona's parental consent and judicial bypass statutes meet constitutional requirements. This Court denied Defendant's motion to dismiss on July 20, 1992 and ordered both parties to file simultaneous briefs by August 3, 1992, addressing the following three concerns: (1) whether the medical emergency provision of A.R.S. § 36–2152(B)(2) as defined provides a constitutionally valid exception to Arizona's parental consent and judicial bypass procedures; (2) whether the statutory language, "medical procedure with respect to an abortion" of A.R.S. § 36–2152(A) is constitutionally sufficient; and (3) whether the judicial bypass provisions of A.R.S. § 36–2153 and Rule 102 provide a minor with a constitutionally sufficient opportunity to obtain expedited review.

In response to this Court's order, Plaintiffs filed an Application for and Memorandum in Support of Permanent Injunction, moving the Court to enter a permanent injunction. Defendant filed a Supplemental Memorandum in Support of Motion for Judgment on the Pleadings. A ruling on these competing dispositive motions requires an examination of the constitutionality of Arizona Revised Statutes §§ 36–2152 and 36–2153.

### BACKGROUND

This action was originally brought before this Court on August 29, 1989. Plaintiffs' Application for Preliminary Injunction was filed on August 30, 1989, which this Court granted on September 18, 1989. On September 19, 1989, this Court issued an order of preliminary injunction enjoining the implementation or enforcement of the provisions of A.R.S. §§ 36–2152 and 36–2153.

On November 13, 1989, Plaintiffs' motion to file a second amended complaint and to amend the order of preliminary injunction to include all additional Defendants in the second amended complaint was granted.

The preliminary injunction has remained in full force and effect. Defendant moved to dismiss for lack of prosecution and for judgement on the pleadings on July 8, 1992, asserting that Arizona's parental consent and judicial bypass statutes (1) do not place an undue burden upon minors seeking an abortion and (2) A.R.S. § 36–2152 is not unconstitutionally vague because it gives persons of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. On July 20, 1992, this Court denied Defendant's Motion to Dismiss for Lack of Prosecution on the basis that this action was left pending awaiting the outcome of the U.S. Supreme Court's ruling on *Planned Parenthood of Southeastern Pennsylvania v. Casey,* —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), and further ordered both parties to file simultaneous briefs addressing specifically the three concerns listed in the introduction to this memorandum.

### DISCUSSION

#### I

##### Standard of Review

In light of the recent U.S. Supreme Court decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey,* —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), it is imperative for this Court to review the principles that define the rights of minor women and the State's legitimate authority respecting the termination of pregnancy by abortion procedures.

Constitutional protection of a woman's decision to terminate her pregnancy derives

from the Due Process Clause of the Fourteenth Amendment. The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The Supreme Court determined that a woman's right to choose whether to terminate her pregnancy is encompassed within the constitutional right of privacy, founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action. *Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973). This determination in *Roe* is based on the recognition of an individual's "freedom of personal choice in matters of marriage and family life," as an essential element of protected liberty. *Id.,* 410 U.S. at 169, 93 S.Ct. at 735, *City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 427, 103 S.Ct. 2481, 2491, 76 L.Ed.2d 687 (1983) ("Akron I")

The Supreme Court affirmed and retained the essential holding of *Roe v. Wade* as to each of its three parts:

> First is a recognition of the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State. Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure. Second is a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger a woman's life or health. And third is the principle that the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child. These principles do not contradict one another; and we adhere to each.

*Casey,* —— U.S. at ——, 112 S.Ct. at 2804. Affirming *Roe's* central holding, the Court emphasized that its decisions have afforded constitutional protection to personal decisions relating to marriage and have recognized "the right of the *individual,* ... to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Casey,* —— U.S. at ——, 112 S.Ct. at 2807, quoting *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972) (emphasis in original).

Of equal importance and central to *Roe* is that "[t]he ability of women to participate equally in the economic and social life of the Nation has been facilitated by their ability to control their reproductive lives." *Casey,* —— U.S. at ——, 112 S.Ct. at 2809.

While the Supreme Court has recognized that the constitutional rights of children cannot be equated with those of adults, and that a state may have compelling interests in insuring that a pregnant minor is able to give her informed consent as well as the interests of the family unit, *Bellotti v. Baird,* 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979) ("Bellotti II"), these interests will not outweigh the privacy interests of minors to the extent that the State will be given unfettered discretion. As noted by Justice O'Connor in *Casey,* the constitutionality of the requirements of a State's statute is based on the reasonable assumption that minors will benefit from consultation with their parents and that children will often not realize that their parents have their best interests at heart. *Casey,* —— U.S. at ——, 112 S.Ct. at 2830.

 The young woman is not beyond the protection of the Constitution merely on account of her minority. *Bellotti II,* 443 U.S. at 633, 99 S.Ct at 3043. Based on this analysis, it follows that it is a constitutional liberty of the minor woman to have some freedom to terminate her pregnancy. As held by the Supreme Court, the undue burden standard is the appropriate means of reconciling the State's interest with the woman's constitutionally protected liberty. *Casey,* —— U.S. at ——, 112 S.Ct. at 2820.

> A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose is

invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. And a statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends.... an undue burden is an unconstitutional burden.... Regulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose.

*Id.*

In its application of the undue burden standard of review, this Court acknowledges the right of the State to enact regulations to further the health or safety of a woman seeking an abortion and to promote its interest in the potentiality of human life subsequent to viability by proscribing abortion "except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Casey* at ——, 112 S.Ct. at 2822; *Roe v. Wade,* 410 U.S. at 164–165, 93 S.Ct. at 732–733.

## II

Medical Procedure in Relation to Abortion

█ A.R.S. § 36–2152 requires parental consent before a "medical procedure with respect to an abortion" may be performed on an unmarried or unemancipated minor.

A. A medical procedure with respect to an abortion shall not be performed on an unmarried or unemancipated minor unless one of her parents or her legal guardian gives written consent to the treating physician for an abortion....

A.R.S. § 36–2152(A).

This Court's order granting preliminary injunction found Plaintiffs had stated a valid claim on vagueness grounds. The Court has continually expressed its concern with the statutory language of § 36–2152. As the statute now reads, an attending physician may be forced to choose between the needs of his or her patient and the possibility of criminal prosecution. The *Casey* decision does not offer anything new which would affect the issues addressed by the previous ruling of this Court. In fact it is the opinion of this Court that an analysis of the Pennsylvania informed consent statute at issue in *Casey*, which was not challenged on vagueness grounds, illustrates the precision with which a statute should be drafted when imposing criminal penalties for non-compliance.

Penalty.—Any physician who violates the provisions of this section is guilty of 'unprofessional conduct' and his license for the practice of medicine and surgery shall be subject to suspension or revocation in accordance with procedures provided under the act ... Any physician who performs or induces an abortion without first obtaining the certification required by subsection (a)(4) or with knowledge or reason to know that the informed consent of the woman has not been obtained shall for the first offense be guilty of a summary offense and for each subsequent offense be guilty of a misdemeanor of the third degree. No physician shall be guilty of violating this section for failure to furnish the information required by subsection (a) if he or she can demonstrate, by a preponderance of the evidence, that he or she reasonably believed that furnishing the information would have resulted in a severely adverse effect on the physical or mental health of the patient.

18 Pa. Cons. Stat.Ann. § 3205(c) (1990).

The affidavits submitted to this Court in support of Plaintiffs' application for preliminary injunction support Plaintiffs' position that physicians cannot readily distinguish between medical procedures which they can lawfully perform at the minor's request and the procedures that may subject them to criminal prosecution if performed without the statutorily required consent of a parent or judge. Physicians may not be willing to perform medical procedures that they have determined are in their patients'

best interests if they fear such procedures may be construed as "a medical procedure with respect to an abortion." A.R.S. § 36–2152 makes no provision for a physician's good faith clinical judgment, which this Court has expressed would be preferable to a post-hoc examination of the doctor's judgment.

While Defendant agrees that the Legislature could or should have used different words when drafting A.R.S. § 36–2152, it is argued that this alone does not render the statute unconstitutionally vague. The proper standard for determining unconstitutional vagueness is whether persons of common intelligence must necessarily guess at what conduct is regulated by the statute. *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). Such a determination cannot be made without examining the statute as a whole. *Webster v. Reproductive Health Services,* 492 U.S. 490, 514, 109 S.Ct. 3040, 3054, 106 L.Ed.2d 410 (1989). Defendant asserts that when § 36–2152 is read as a whole, persons of common intelligence can conclude that the statute regulates only abortions and not other medical procedures. The affidavits offered in support of Plaintiffs' application for preliminary injunction show otherwise.

Rule 12(c) of the Federal Rules of Civil Procedure requires that a motion for judgment on the pleadings be treated as a motion for summary judgment pursuant to Rule 56 when matters in addition to those set forth in the pleadings are considered. In the event that this Court were to rely on the affidavits submitted by Plaintiffs in support of their preliminary injunction when determining the merits of their motion for judgment on the pleadings, Defendant contends that the Court should evaluate the affidavits under the standards required by Rule 56(e). Defendant further argues that the affidavits fail to meet the more stringent standards and do not support Plaintiffs' vagueness claim. The Court disagrees and finds that Plaintiffs' submissions meet the requirements of Rule 56(e).

Defendant refutes the content of the affidavits collectively and summarizes that "as a matter of law pregnancy tests, diagnostic procedures, chemotherapy or genetic testing, communication of diagnoses and counselling are not medical procedures for abortions for which parental or judicial consent is required."

Defendant asserts arguendo that "a doctor can simply await the consent of a judge or the minor's parent or guardian.... [C]ertainly if requiring consent prior to the exercise of the fundamental right to abortion is constitutional, it cannot be unconstitutional to require the same consent for sonograms, amniocentesis, and other diagnostic medical procedures." Defendant reaches the erroneous conclusion that "[b]ecause no fundamental right is impacted by the alleged vagueness, the vagueness challenge must await the actual adverse enforcement of the statute if indeed such enforcement ever occurs."

This Court finds that it is unclear what medical procedures A.R.S. § 36–2152 proscribes, absent parental or guardian consent. Because a physician may be forced to choose not to perform a medical procedure which he or she may deem in good faith clinical judgment necessary to avoid a threat to the life or health of the woman, indeed the fundamental right of the woman is impacted by the vagueness of the statutory language of § 36–2152.

### III

#### Definition of Medical Emergency

Even if A.R.S. § 36–2152 were to survive the challenge on grounds of vagueness, the statute does not meet the constitutional requirement of providing an adequate medical emergency exception.

A.R.S. § 36–2152(B)(2) provides:

**B.** Consent pursuant to subsection A is not required if:

. . . . .

2. There is an emergency need for an abortion to be performed or induced such that continuation of the pregnancy is an immediate threat and grave risk to the

life of the pregnant woman and the attending physician so certifies in writing.

The essential holding of *Roe,* affirmed in *Casey,* forbids a State from interfering with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health. *Casey,* —— U.S. at ——, 112 S.Ct. at 2822; *Roe v. Wade,* 410 U.S. at 164, 93 S.Ct. at 732; *see also Harris v. McRae,* 448 U.S. 297, 316, 100 S.Ct. 2671, 2687, 65 L.Ed.2d 784 (1980).

Plaintiffs refer to the affidavit of Herbert Pollack, M.D., filed in support of Plaintiffs' Opposition to the Motion to Dismiss, which indicates that conditions of inevitable abortion, incomplete abortion, and premature ruptured membrane, pose serious threats to a woman's health without creating a grave and immediate risk of death.

Plaintiffs assert that the statutory scheme of § 36–2152(B)(2) may force a delay of an abortion even though a delay may perpetuate very serious health risks to the woman such as the risk of sterility, blood transfusions, shock, and continued serious pain, because that risk might not amount to an "immediate threat and grave risk to the life of the pregnant woman." The essential holding of *Roe* protects a woman's right to undergo an abortion without delay if the alternative is a serious health risk. The exception provision of § 36–2152, which applies only in life-threatening cases, renders the Arizona statute unconstitutional.

The Supreme Court in *Casey* confirmed that a medical emergency exception that does not take into consideration the health of the woman is unconstitutional. In contrast to the language of A.R.S. § 36–2152, the Pennsylvania statute at issue in *Casey* defines medical emergency:

> That condition which, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of major bodily function.

18 Pa. Cons. Stat. § 3203 (1990); *Casey,* —— U.S. at ——, 112 S.Ct at 2833.

In response to the plaintiffs' argument that the definition for medical emergency in the Pennsylvania statute "forecloses the possibility of an immediate abortion despite some significant health risks," the Supreme Court stated:

> Because it is central to the operation of various other requirements, we begin with the statute's definition of medical emergency.... If the contention were correct, we would be required to invalidate the restrictive operation of the provision, for the essential holding of *Roe* forbids a State from interfering with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health. 410 U.S., at 164, 93 S.Ct., at 732. See also *Harris v. McRae,* 448 U.S., at 316, 100 S.Ct., at 2687.

*Casey,* —— U.S. at ——, 112 S.Ct. at 2822.

The Court of Appeals in *Casey* interpreted "serious risk" to include the same conditions set forth in Dr. Pollock's affidavit. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 947 F.2d 682, 701 (3rd Cir.1991). The Supreme Court adhered to the Court of Appeals decision, which concluded that "we read the medical emergency exception as intended by the Pennsylvania legislature to assure that compliance with its abortion regulations would not in any way pose a significant threat to the life or health of a woman." *Id.*

The Supreme Court concluded that the medical emergency exception for "serious risk of substantial and irreversible impairment of a major bodily function" was broad enough to include the same medical conditions raised by Dr. Pollock, and held that the statute imposes no undue burden on a woman's right to an abortion.

Absent broader language addressing a "serious risk" to the "health" of the minor woman, this Court cannot uphold the emergency medical exception as constitutional. Although "[w]here fairly possible, courts should construe a statute to avoid a danger

of unconstitutionality," *Ohio v. Akron Reproductive Health Center,* 497 U.S. 502, 514, 110 S.Ct. 2972, 2980, 111 L.Ed.2d 405 (1990) ("Akron II") (citation omitted), the only reasonable interpretation of the language in § 36–2152 is that the exception applies only if the life of the woman is at risk and thus, is unconstitutional.

## IV

### A.R.S. § 36–2153

### Judicial Bypass Statute

Because this Court has determined that A.R.S. § 36–2152 is unconstitutional on the grounds of vagueness and an inadequate medical emergency exception, it is not necessary to address the constitutional adequacy of the expeditiousness and accessibility of the judicial bypass procedure. If this decision is upheld on appeal, the Legislature will need to consider new legislation. In an effort to avoid future litigation, the Court takes this opportunity to express its ongoing concerns in respect to Arizona's procedures for judicial bypass.

While A.R.S. § 36–2153, Arizona's judicial bypass statute, does not set forth explicit time periods for appellate review, the Legislature required the Arizona Supreme Court to provide for expedited appellate review. The State Supreme Court adopted Rule 102 in response to the legislative mandate, setting forth the following time schedule for appellate review of the denial of a minor's judicial bypass petition:

> An appeal from an order issued under A.R.S. § 36–2153 shall be heard and decided by the appellate court within five days after the filing of the notice of appeal, and shall take precedence over all other actions. Following a decision of the court of appeals, further review of the matter may be sought by petition for review filed within five days after the decision of the court of appeals. Such further appellate review, if any, shall be heard and decided within five days after the filing of the petition for review.

Rule 102(e), Arizona Rules of the Supreme Court.

Plaintiffs argue that § 36–2153 and Rule 102 fail to provide a sufficiently expeditious and accessible bypass procedure for the pregnant minor and that the Supreme Court's decision in *Casey* adds nothing to the resolution of this issue. The Supreme Court reaffirmed the existing precedents and stated:

> We have been over most of this ground before. Our cases establish, and we reaffirm today, that a State may require a minor seeking an abortion to obtain the consent of a parent or guardian, provided that there is an adequate judicial bypass procedure. (citations omitted)

*Casey,* —— U.S. at ——, 112 S.Ct. at 2832.

A comparison of the bypass procedures available under Pennsylvania's parental consent law with § 36–2153 shows that the Pennsylvania law contains a more expedited hearing structure at the crucial trial court level than the Arizona statute. Plaintiffs concede that Rule 102 rectifies many of the procedural deficiencies but argue that it does not sufficiently eliminate all constitutional defects, and in fact, raises two "potentially insurmountable hurdles" in the way of minors seeking to appeal the denial of a petition for a waiver of the parental consent requirement.[1]

First, the requirement that a minor must file a notice of appeal with the clerk of the superior court within 24 hours of the date she or her counsel receives actual notice of the order pursuant to Rule 102(a), places a "truly onerous burden on the young woman seeking to exercise her constitutional rights."[2] In essence, this places the burden on the minor to act expeditiously.

Plaintiffs argue that the dangers inherent in holding the minor to a 24 hour requirement for filing an appeal are substantial. Addressing this issue, the Supreme Court held "there are few situations in which denying a minor the right to make an important decision will have conse-

---

1. Plaintiffs' Application for and Memorandum in Support of Permanent Injunction, page 13.

2. *Id.*

quences so grave and indelible." [3] *Bellotti II*, 443 U.S. at 642, 99 S.Ct. at 3048. Plaintiffs compare the standard deadline of 30 days in which to file a notice of appeal for civil matters, Rule 9(a), Rules of Civil Appellate Procedure, to the 24 hour deadline a young woman seeking an abortion without parental consent must adhere to if the superior court denies her petition, a denial which may amount to a denial of her fundamental constitutional right to an abortion. An unrepresented minor has no way of knowing of this requirement until she receives a notice of the denial of her petition from the court. She will then be allowed only 24 hours during which she must read and decipher the clerk's directions as to how to appeal the court's decision and prepare and file a notice of appeal. As the Plaintiffs assert, the problem presented by the 24–hour requirement is compounded by the fact that it applies to minors who are seeking to obtain abortions without their parents' knowledge, making notice to the minor of the adverse decision problematic regardless of whether or not she has an attorney. The Court agrees that such a requirement places an undue burden on the minor who finds herself in this situation.

Secondly, the bypass procedure does not create a structure sufficient to insure that a minor will have an effective opportunity to obtain judicial permission to make the abortion decision without parental consent. The Arizona statute, which provides for appointment of an attorney to represent the minor at the request of the minor, can be distinguished from the statutes upheld by the Supreme Court in *Casey, Akron II,* and *Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft,* 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) ("Ashcroft"). In *Ashcroft,* a minor pursuing a bypass was permitted to proceed through a "next friend." 462 U.S. at 479 n. 4, 103 S.Ct. at 2519 n. 4. The trial court in *Akron II* was required to appoint a guardian ad litem and an attorney to represent the minor if she had not retained her own counsel. 497 U.S. at 509–10, 110 S.Ct. at 2978. In *Casey,* parental consent

§ 3206(e) provides for the minor woman's representation at court proceedings as follows:

> The pregnant woman may participate in proceedings in the court on her own behalf and the court may appoint a guardian ad litem to assist her. The court shall, however, advise her that she has a right to court appointed counsel, and shall provide her with such counsel unless she wishes to appear with private counsel or has knowingly and intelligently waived representation by counsel.

18 PA. Cons. Stat.Ann. § 3206(e) (1990).

The Supreme Court's affirmation of the statutory language requiring the minor woman to "knowingly and intelligently" waive representation by counsel expresses the importance of representation when one's fundamental rights are at issue; the language is similar to the language used to avoid a violation of one's Sixth Amendment right to counsel. Although a minor woman does not have a constitutional right to representation of counsel at a judicial bypass proceeding, the requirement that a woman waive court appointed counsel knowingly and intelligently, demonstrates the Supreme Court's acknowledgement that the young woman should be made aware of the implications of self-representation.

A.R.S. § 36–2153(A) provides for appointment of an attorney at the initial State court bypass proceeding, only at the request of the minor.

> ... The court, on request of the minor, shall appoint an attorney to represent the minor at all judicial proceedings. Pursuant to procedures adopted by the presiding judge of the superior court in the county in which the petition is filed, the clerk of the court shall assist a minor who is unrepresented by an attorney in the procedural aspects of filing the petition....

Appointment of counsel for appellate review are governed by Rule 102(c) which states:

> The presiding judge of the superior court shall appoint an attorney for a minor seeking review of an order under A.R.S.

---

**3.** *Id.*

§ 36–2153, and the charge therefore shall be a state charge, to be paid by the state treasurer.

There is no provision within Arizona's statutory regulations for appointment of a guardian ad litem or for allowing the young woman to proceed through a "next friend." Absent provisions for court appointed counsel at all levels of the proceedings, appointment of a guardian ad litem and/or allowing the woman to proceed through a next friend, the statute appears insufficient to insure that the minor woman will have an effective opportunity to obtain judicial permission to make the decision without parental consent.

Defendant argues that an Arizona minor seeking judicial approval for an abortion would be required to wait no more than 24 days.[4] Of these 24 days, Defendant concedes that "no more than" 19 can be attributed to possible court delays. Only five of the 24 days may be shortened at the discretion of the petitioner minor woman. Defendant argues that the 19 day court delay is a worst case scenario which cannot form the basis of the Court's decision in this facial challenge. *Akron II*, 497 U.S. 502, 513–14, 110 S.Ct. 2972, 2980. Defendant argues that because the Supreme Court has upheld judicial bypass statutes which take up to 17 days plus additional time for court deliberation, *Ashcroft*, 462 U.S. 476, 103 S.Ct. 2517, and a judicial bypass procedure that could take up to 22 days, *Akron II*, Arizona's judicial bypass procedures are "clearly" constitutional.

The Court additionally expressed its concern regarding possible delay in appellate review of a superior court order denying a minor woman's petition pursuant to the judicial bypass provisions of A.R.S. § 36–2153 at the hearing on July 20, 1992. The Court expressed its concern of time being of the essence and specifically requested counsel to address what recourse is available to the pregnant woman if the court,

for whatever reason, does not rule on the appeal. The Court noted that it would be preferable if the statute at least said that it is presumed that permission was granted or that permission was denied. Either would be preferable than giving no remedy; at least the woman would know where she stood. Neither party has addressed the Court's inquiry. Nevertheless, it is the view of this Court that this issue, as well as the other concerns raised, should be given consideration if the Legislature is required to reconsider this statute in the future.

Based on the foregoing, it is the finding of the Court that: (1) the "medical procedure with respect to an abortion" language in A.R.S. § 36–2152 is unconstitutionally vague; (2) the definition of medical emergency in A.R.S. § 36–2152, which fails to take into consideration the health of the minor woman, is unconstitutionally narrow, and therefore places an undue burden on the minor woman who chooses to exercise her fundamental right to terminate her pregnancy. Therefore;

IT IS ORDERED that Defendant's Motion for Judgment on the Pleadings is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' Application for Permanent Injunction is GRANTED;

IT IS FURTHER ORDERED that Defendants and those persons in active concert or participation with Defendants are hereby permanently enjoined from implementing or enforcing the provisions of A.R.S. § 36–2152 in any manner.

Judgment shall be entered accordingly.

---

**4.** Defendant's Supplemental Memorandum in Support of Motion for Judgment on the Pleadings, page 3, Footnote 2. Twenty-four (24) days are calculated as follows: 5 days (for superior court to hear petition) + 72 hours (for deliberation and decision) + 24 hours (filing of notice of appeal) + 5 days (for hearing and decision by court of appeals) + 5 days (for preparation of and filing petition for review) + 5 days (for hearing and decision by Supreme Court) = 24 days.