## MEMPHIS PLANNED PARENTHOOD, INC.

v.

### Donald SUNDQUIST, et al.

#### No. 3:89–0520.

United States District Court, M.D. Tennessee, Nashville Divison.

Aug. 27, 1997.

---

Irwin Bruce Venick, Dobbins & Venick, Nashville, TN, Barbara E. Otten, Dara Klassell, Roger K. Evans, Eve W. Paul, Planned Parenthood Federation of America, New York, NY, Larry D. Woods, Woods & Woods, Nashville, TN, Jennifer Kay Brown, Louise Frances Melling, Reproductive Freedom Project, ACLU, New York, NY, Nancy Jean Northup, Julia J. Tate, Jill A. Hanson, Levine, Mattson, Orr & Geracioti, Nashville, TN, for plaintiffs.

Michael William Catalano, Office of the Attorney General, Nashville, TN, Lisa A. Yacuzzo, Office of the Attorney General, General Civil Division, Nashville, TN, for defendants.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court is Plaintiff's Motion for Preliminary Injunction and for Leave to File a Supplemental Complaint (Doc. No. 100), to which Defendant has filed a Memorandum in Opposition (Doc. No. 115). Oral argument on the Motion was held on August 25, 1997. At oral argument, this Court granted Plaintiff's Motion for Leave to File Supplemental Complaint. For the reasons stated below, the Court grants the Plaintiff's Motion for Preliminary Injunction.

### I. Background

This case involves a challenge to Tennessee's Parental Consent for Abortions by Minors Act of 1995, Tenn.Code Ann. §§ 37–10–301 to –307 (hereinafter "the Act"). The law makes it a crime for a physician to provide an abortion to a young woman under the age of eighteen, absent written consent of one parent (or legal guardian) or court order. Tenn.Code Ann. § 37–10–303(a). Alternatively, the law provides the minor an opportunity to petition a court for waiver of the parental consent requirement, Tenn.Code Ann. § 37–10–303(b), which shall be granted if the minor is "mature and well informed enough to make the abortion decision on her own or ... the abortion would be in the

minor's best interests." Tenn.Code Ann. § 37–10–304(e). Minors file their petitions in juvenile court, and may appeal a denial of a petition to the circuit court and to the supreme court. Tenn.Code Ann. § 37–10–303(b) and 304(g). The Act also provides for various mechanisms for protecting a minor's anonymity in filing her petition and in appearing in court. Tenn.Code Ann. § 37–10–304.

On July 9, 1996, this Court enjoined the Act's enforcement, finding that Plaintiff had substantial likelihood of success on the merits, and finding expedition and confidentiality problems in the Act's judicial bypass procedures. *Memphis Planned Parenthood, Inc. v. Sundquist,* No. 89–0520 (M.D.Tenn. July 9, 1996). The State appealed the ruling.

While the appeal was pending, the Supreme Court of Tennessee issued an amended rule governing the Act's judicial bypass procedures in an effort to address the deficiencies outlined in the district court's ruling. Tenn.Sup.Ct.R. 24 (hereinafter "Rule 24" or "the Rule").[1] In light of the new Rule, on August 1, 1997 the Sixth Circuit vacated the injunction as moot. *Memphis Planned Parenthood, Inc. v. Sundquist,* 121 F.3d 708 (6th Cir.1997). The appeals court remanded the case back to the district court for consideration of Plaintiff's claims that a constitutional defect remains in the Act and was not addressed by Rule 24, and that the Act as modified by Rule 24[2] raises new constitutional problems. Specifically, the contested portions of the Act are as follows:

(1) The original Act requires that if a minor wishes to appeal a decision by the juvenile court denying her bypass, she must do so within twenty-four hours of its issuance. Tenn.Code Ann. § 37–10–304(g).

(2) Under the Act, a minor must state in her bypass petition whether she is of "sound mind and has sufficient intellectual capacity to consent to an abortion." Tenn.Sup.Ct.R. (24)(5)(a)(iv) and App., Model Petition ¶ 6.

(3) The Act allows minors to file bypass petitions only in their home county or in the county in which the abortion will be performed. Tenn.Sup.Ct.R. 24(4).

(4) The Act allows the circuit court hearing a minor's appeal *de novo* upon denial of her petition to require the minor to testify. Tenn.Sup.Ct.R. 24(12)(d).

(5) Prior to seeking a judicial bypass, a minor must consult with the physician who is to perform the abortion, or a referring physician, about the risks and benefits of abortion. Tenn.Sup.Ct.R. 24(5)(a)(iii) and App., Model Petition ¶ 4.

Plaintiff argues that these provisions of the Act impose unrealistic procedural requirements, do not adequately safeguard young women's anonymity, and do not account for the needs of immature or incapacitated minors. It claims that as a consequence, a substantial number of pregnant minors in Tennessee will forfeit their right to circumvent their parents in making the abortion decision. Plaintiff asks the Court to enjoin the State from enforcing the Act until its constitutionality may be fully litigated. Defendant argues that while the stress experienced by any young woman seeking to terminate a pregnancy without her parents' knowledge is undeniable, the Act's provisions do not unduly add to that burden. Indeed, Defendant asserts that it has provided substantial support services to help Tennessee minors negotiate the bypass process. Finally, Defendant asks that even if this Court grants the preliminary injunction as to the five contested provisions, that it sever those portions and permit the remainder of the Act to remain in effect.

## II. Discussion—Preliminary Injunction

■ In determining whether a preliminary injunction should be granted, the Court must consider the following factors: (1) the likelihood of the movant's success on the merits; (2) the irreparable harm that could result if

---

1. The Rule was issued pursuant to Tenn.Code Ann. § 37–10–304(i), which states: "The supreme court is respectfully requested to promulgate any rules necessary to ensure that proceedings under this part are handled in an expeditious and anonymous manner...."

2. Because the Act now incorporates the changes made by Rule 24, all subsequent discussion of the Act refers to the Act as modified by the Rule (except where otherwise noted).

the injunction is not issued; (3) the impact on the public interest of granting or denying the injunction; and (4) the possibility of substantial harm to others if the injunction is issued. *See Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992). Sixth Circuit precedent makes clear that these four factors are not absolute prerequisites, but rather are factors to be balanced by the Court. *Performance Unlimited v. Questar Publishers, Inc.,* 52 F.3d 1373, 1381 (6th Cir.1995) (*citing In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985)). If a party demonstrates substantial likelihood of success on the merits, the three other factors will favor the party as well. *Planned Parenthood Ass'n v. McWherter,* 716 F.Supp. 1064, 1066 (M.D.Tenn.1989); *cf. Performance Unlimited,* 52 F.3d at 1385–86 (*quoting Merrill Lynch, Pierce, Fenner & Smith v. Grall,* 836 F.Supp. 428, 432 (W.D.Mich.1993) (citation omitted)). The Court therefore will focus its inquiry upon the first factor, although it will also consider the others in turn.

### A. Likelihood of success on the merits

■ Established Supreme Court precedent holds that while a State may require a minor to receive parental consent before obtaining an abortion, it must also provide an alternative judicial bypass procedure so that a minor may avoid parental involvement. *See, e.g., Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 510–19, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (*Akron II*); *Hodgson v. Minnesota,* 497 U.S. 417, 461, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (O'Connor, J., concurring in part and concurring in judgment in part); *Id.,* at 497–501 (Kennedy, J., concurring in judgment and dissenting in part); *Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 440, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (*Akron I*); *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*). Judicial waiver is granted if a minor can show (a) that she is mature enough to make the abortion decision on her own, or (b) that an abortion would be in her best interests. *Bellotti II,* 443 U.S. at 647–48. The bypass must be "completed with anonymity and sufficient expedition to provide an effec-

tive opportunity" for a minor to exercise her right to an abortion. *Id.* at 644. Finally, these standards are to be read in light of the Court's decision in *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In *Casey,* the Court found that a state law which poses an "undue burden" to a woman's access to abortion is unconstitutional.[3] This principle applies with equal force to minors' access. *Id.* at 899.

### 1. Twenty-four-hour notice of appeal

■ Under the Act, initial determinations of waiver petitions are heard by the juvenile court. Tenn.Code Ann. § 37–10–303(b). If a petition is denied, the Act provides that "[a] notice of appeal shall be filed within twenty-four (24) hours of the decision by the juvenile court." Tenn.Code Ann. § 37–10–304(g). The Act does not require the juvenile court to rule on the petition at the conclusion of the hearing, when the minor is still present. Rule 24 elaborates upon this provision by requiring that if a decision is not rendered at the time of the hearing, the minor is responsible for obtaining the court's decision by contacting the clerk of the court. Tenn.Sup. Ct.R. 24(11)(e). Most notably, the time limit for appeals runs not from the time of notice to the minor, but from the time of decision by the court. Tenn.Code Ann. § 37–10–304(g).

Plaintiff is likely to prove that the Act's notice of appeal provision poses an undue burden. The law impermissibly shifts to the pregnant minor the burden of acting expeditiously. The Court is persuaded that the Act so limits a minor's opportunity to preserve her right of appeal—and thus to obtain an abortion without her parents' knowledge—that the opportunity is effectively eliminated. *Mills v. Habluetzel,* 456 U.S. 91, 101, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) (striking as "unrealistically short" a one-year time limit on bringing paternity suits for children born out of wedlock).

The Court particularly notes the statements provided by Tennessee abortion clinic administrators describing the extreme limitations faced by teen-aged pregnant patients in making arrangements to obtain their abortions without parental knowledge. The dec-

---

**3.** An undue burden is defined as having "the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Casey,* 505 U.S. at 877.

laration of Diane Butler, a clinic director in Memphis, illustrates this point forcefully:

> Making even a single phone call is difficult. Minors will call us, then whisper suddenly, "my mom's home!," and hang up. They will call back, sometimes that day but often a day or two later. The problems are compounded if the calls are long distance. I have had parents of minors call our number because it showed up on their bill. They ask who we are and who called us. We never reveal the name of the caller, but just knowing that someone from the home called our clinic is enough to give the minor away. Minors frequently call us from a pay phone or a friend's house. They also miss appointments without calling until a few days later, telling us they could not get to a phone safely to cancel. Finally, about ten percent of our patients do not even have phones in their homes.

Butler Decl., at ¶ 8. The difficulty of making a single phone call is exponentially increased when a minor attempts to be absent from home, school, or work. One clinic administrator stated in her affidavit that minors often reject the first available appointment time for their abortions so as to better plan for an absence from home. Wright Decl., at ¶ 6. This is especially true for those minors who must travel long distances to reach the clinic. Simpson Decl., at ¶ 10. Minors who do not drive or have cars must rely on others to take them to the clinic; a ride that falls through, or a parent who unexpectedly stays home, results in a minor further postponing her clinic visit. *Id.*

Given these realities, the twenty-four-hour appeals limit will simply be impossible for many minors to satisfy.[4] Under the Act, the appeals clock begins to run at the time the juvenile court's decision is entered, not when the minor receives notice of that decision. Such deck-stacking against a teen-aged plaintiff is clearly improper. *See, e.g., Manning v. Hunt,* 119 F.3d 254, 274–75 (4th Cir.1997) (in only circuit court decision upholding twenty-four-hour limit on appeals, law required juvenile court judges to notify minors *at the conclusion of the initial hearing* whether they were granting or denying the motion, eliminating notice problems); *Planned Parenthood v. Neely,* 804 F.Supp. 1210 (D.Ariz.1992) (twenty-four-hour appeal rule struck down as a "truly onerous burden," even though clock did not begin running until minor received notice of the petition's denial). Under the Tennessee law, a minor must first find the opportunity to call the courthouse to learn the juvenile court's decision, which is undoubtedly already hours old. She must immediately understand what the denial means for her, what the procedure is for appealing it, and what the repercussions are if she fails to do so. She must immediately secure transportation to the courthouse to prepare and file an appeal, and make the trip and back without arousing her parents' suspicion. Such a tight timeline is especially unrealistic in light of this Court's conclusion *infra* that many minors will attempt to file such petitions outside their home counties and thus will travel greater distances to file their petitions.[5]

---

**4.** The Court notes that minors needing to utilize the bypass procedure constitute a small minority of those minors seeking abortions. Pl.'s Second Supp.Comp., at ¶ 34 ("The majority of minors seeking abortion services from Plaintiff have the consent of one parent."). Under the Supreme Court's undue burden framework articulated in *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), a "significant number" of the specific population affected by an abortion statute must be unduly burdened by it. *Id.* 505 U.S. at 894. Here, the population to be assessed is pregnant minors who desire abortions and who do not wish to involve their parents in that decision. The Court feels confident that for any teenager, but particularly one who is desperate to keep her abortion secret from her parents, the burdens posed by this provision of the Act are undue.

**5.** There was some debate between counsel at oral argument as to the maximum amount of time

minors would be traveling to obtain abortions, given that abortions are performed in just four counties around Tennessee. State counsel estimated that minors would not be forced to travel longer than two and one-half hours in any direction to obtain an abortion in the state. The Court notes its skepticism of this estimate, in light of clinic administrators' affidavits stating that some patients travel longer distances to reach them. *See* Lloyd Decl., at ¶ 14 (stating that minors travel up to three hundred miles to obtain clinic's services); Butler Decl., at ¶ 2 stating that patients travel up to four hours to reach clinic; Simpson Decl., at ¶ 19 (stating that patients travel up to six hours to reach clinic). Furthermore, these distances may be increased when a patient's pregnancy is more advanced—as minors' often are—because fewer clinics provide such services. *See* Butler Decl., at ¶ 2 (noting that no

The State has failed to convince the Court that its provision of an "800" number and court-appointed advocates and attorneys will sufficiently alleviate the burdens posed by the appeals period. *See* Tenn.Code Ann. §§ 37–10–304(c)(1) and (c)(2).[6] Irrespective of the question of fact created by the parties' competing affidavits as to whether the hotline and advocate system are currently operational, the Court finds that these mechanisms lessen some burdens only at the expense of creating others: while an advocate or attorney may do some of the procedural legwork for a minor, the fact that a minor is represented changes only whom the minor is required to call in pursuing her petition, not the fact of having to make phone calls under tight time constraints. Moreover, the same difficulties encountered by minors in *making* phone calls also apply to their *receiving* them. Lloyd Decl., at ¶ 4; Butler Decl., at ¶ 10.

Furthermore, the fact that the State offers an "800" number, an advocate, and an attorney to minors does not lessen the deprivation suffered by minors who choose to proceed unrepresented, and who lose their right to appeal as a result. It is well-settled that a waiver of counsel must be "knowingly and intelligently" made in order to be constitutionally sound. *See Planned Parenthood v. Neely*, 804 F.Supp. 1210, 1217 (D.Ariz.1992) (alluding to the abortion as well as the Sixth Amendment context). As the State noted in oral argument, providing such assistance to minors is not constitutionally required. Consequently, this Court must assure that the procedure is constitutionally sound for those minors who do not utilize the State's personnel.

Finally, the Court notes that the State has failed to articulate a substantial countervail-

ing interest in imposing such a rigid timeline when the initial petition is denied, while elsewhere in the Act no such limits are imposed. For example, if the juvenile court fails to rule on the petition within forty-eight hours, a minor may appeal "immediately," but is not held to any time limit. Tenn.Sup.Ct.R. 24(11)(d). Similarly, if the circuit court denies the appeal, the minor faces no restriction on the time it takes for her to appeal to the Supreme Court. Tenn.Sup.Ct.R. 24(12)(e).

### 2. The "sound mind" and "sufficient intellectual capacity" requirement

■ Rule 24 requires that a minor must allege in her bypass petition "whether she is of sound mind and has sufficient intellectual capacity to consent to the abortion." Tenn. Sup.Ct.R. 24(5)(a)(iv). A Model Petition is provided in the Rule's Appendix.[7] In the Model Petition, Paragraph (6) also lists the criterion that the "[a]pplicant is of sound mind and has sufficient intellectual capacity to consent to the abortion." Tenn.Sup.Ct.R. 24, App. ¶ 6. The Model Petition's next paragraph then states that the "[a]pplicant is mature and capable of giving informed consent to the proposed abortion. AND/OR The performance of the abortion upon the applicant would be in the applicant's best interests." Tenn.Sup.Ct.R. 24, App. ¶ 7. Plaintiff asserts that Paragraph (6) appears to make maturity a mandatory factor to which the minor must attest, in effect imposing a prerequisite for even filing the petition at all. Consequently, it will deny immature and otherwise incapacitated minors access to the bypass procedure entirely. Thus, Plaintiff contends that this portion of the petition

---

clinic in Tennessee provides abortions after fifteen weeks, and such patients must travel to Arkansas or Illinois for their abortions); Pl.'s Second Supp.Comp., at ¶ 50 (describing reasons for minors' delay in receiving abortion care). Even if the State's estimates are accepted, however, the Court believes that for most minors, an unplanned five-hour round trip to a courthouse to file an appeal, in addition to the trips already required to file the initial petition and to obtain the abortion, is unduly burdensome.

6. Defendant's argument that the Supreme Court's decision in *Planned Parenthood, Kansas*

*City, Mo. v. Ashcroft*, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) supports the constitutionality of the twenty-four-hour appeal is also misplaced. Although the Missouri statute at issue in that case involved an analogous provision and the Court expressed approval of the law as a whole in a footnote, *id.* 462 U.S. at 491 n. 16, the Court did not explicitly examine the time frame for notice of appeal or rule on it.

7. The Rule states that "[t]he form of the petition shall be prepared and filed in substantial conformity with the form set forth in the appendix to this Rule." Tenn.Sup.Ct.R. 24(6).

contravenes the dictates of *Bellotti II* that every minor must have the ability to petition a court for a bypass, and that the bypass must be granted if the minor is either sufficiently mature or the abortion is in her best interests. *See Bellotti*, 443 U.S. at 643–44. The State counters that the Rule's language asks the minor to only state *"whether* she is of sound mind and has sufficient intellectual capacity to consent to the abortion." This implies that that question may be answered in the negative, allowing a judge to then assess whether the abortion is in the minor's best interest.

The Court finds the potential unconstitutionality of this portion of the Act to be the most speculative of all the challenged provisions. On the one hand, the State is correct that the Rule's language does not explicitly foreclose an immature minor's access to the courts. Paragraph (7) of the Model Petition confirms that maturity is not an absolute requirement for receipt of a bypass. The State also urges that use of the Model Petition is merely a guide, not a verbatim mandate, for minors' petitions. Furthermore, the Court has confidence in the ability of state judges to use constitutionally sound judgment in assessing petitions submitted by immature or incapacitated minors, regardless of the ambiguous standard the Rule proposes. *See Ohio v. Akron Center for Reproductive Health*, 462 U.S. 502, 515, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (*Akron II* ) ("Absent a demonstrated pattern of abuse or defiance, a State may expect that its judges will follow mandated procedural requirements.").

However, it is not the ability of the state court to exercise its duty which is the primary concern here. Rather, it is the ability of all pregnant minors who wish a bypass to receive a hearing, and thus to have an "effective opportunity" to exercise their right to abortion. *Bellotti*, 443 U.S. at 644. The Court agrees with Plaintiff that Paragraph (6) of the Model Petition appears to create a maturity prerequisite. By conflating the standards for what a minor must assert in

her petition and what the juvenile court judge must discern in his or her courtroom, the Model may convey to certain minors that unless they can satisfy the "sound mind" and "intellectual capacity" prerequisite of Paragraph (6), a determination about their "best interests," as provided in Paragraph (7), will not even occur.

The language in Rule 24 itself—that a minor must state "whether" she is of sound mind and sufficiently mature—is also not without significant ambiguity: while a minor could read such language, answer "no," and still submit the petition, as the State urges, the Court believes it would be an equally plausible reading by those minors who are unable to attest to a "sound mind and sufficient intellectual capacity" that they fail to satisfy a component of the petition, and are not permitted to submit it at all. Thus, this language potentially poses an undue burden to immature minors, or minors who are incapacitated due to mental disability, mental illness, or other detriment. The Supreme Court in *Planned Parenthood, Kansas City, Mo. v. Ashcroft*, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) makes clear that it is the court's job, not the minor's, to gather evidence in support of the petition and to only render a decision after such factfinding has occurred: "[A] court [can]not deny a petition 'for good cause' unless it first [finds]—after having received the required evidence—that the minor [is] not mature enough to make her own decision." *Id.* 462 U.S. at 493 (*citing Bellotti*, 443 U.S. at 643–44, 647–48).[8]

Given the Rule and the Model Petition's ambiguities, the Court finds that the Plaintiff is likely to succeed on the merits regarding the "sound mind" and "sufficient intellectual capacity" requirement. It is particularly bound to do so in light of the dire, irreparable harm which will result to these especially vulnerable girls if they are indeed deterred from seeking a bypass. The Constitution

8. The State urges the Court to read *Ashcroft* as endorsing the Rule's language because the Missouri parental consent law at issue in that case contained an identical provision. The Court is not convinced of this fact, however, given that the *Ashcroft* Court merely reprinted the state statute in a footnote, but never addressed the constitutionality of the provision. *Ashcroft*, 462 U.S. at 479 n. 4 (reprinting provision that minor's petition must state that she "is of sound mind and has sufficient intellectual capacity to consent to the abortion").

demands easing minors' petition-drafting burdens, rather than multiplying them.

### 3. The venue restriction

■ While the Act provides that a minor submitting a bypass petition may file it in "the juvenile court of any county of this state," Tenn.Code Ann. § 37–10–303, the Rule amends this provision by limiting the minor to "filing a petition in the Juvenile Court of either the county in which [she] resides or the county in which the abortion is sought." Tenn.Sup.Ct.R. 24(4).

The Court finds that the Act's restriction of a minor's petition to her home county or the county in which her abortion is to be performed likely constitutes an undue burden. Like the twenty-four-hour appeal rule, this provision substantially risks compromising a minor's confidentiality and deterring her exercise of her right to a bypass petition. If a minor files her petition in her home county, she may encounter family or friends who will question her purpose there. This is particularly true in small, rural communities; indeed, Plaintiff presented evidence of one girl discovering that her bypass hearing would be conducted by her former Sunday school teacher. Simpson Decl., at ¶ 18. If a minor instead chooses to file in the county where her abortion is to be performed, she faces the need to travel for possibly hundreds of miles [9]—only to have to return on a later date to obtain her abortion.

The State contends that the venue provision must stand because the State is not obligated to remove any and all possibility that a minor's efforts to obtain an abortion will be discovered. It points to a Louisiana district court decision upholding a similar restriction. *Margaret S. v. Treen*, 597 F.Supp. 636, 652 (E.D.La.1984) (limiting filing of petitions to the "parish" in which the girl lives or in which the abortion is to be performed). It also notes that it is more convenient for witnesses to attend a hearing in the counties specified by the Rule. This Court believes, however, that the burdens posed by the venue restriction are more than incidental or unavoidable. Rather, the provision affirmatively creates a substantial risk that a young woman's confidentiality will be compromised, either by direct discovery in her home county or because of her prolonged absence traveling to the county where the abortion will be performed. Such potential is not hypothetical nor implausible, but, as noted *supra*, proven and likely for the small group of minors it affects. Furthermore, this Court is concerned first and foremost with the ability of the minor to access the bypass procedure, and feels certain that the burden of rearranging schedules and traveling inconvenient distances is more appropriately placed upon adult witnesses.

Under the original Act, a minor had the freedom to file her petition in any county she desired. While such a policy may not have eliminated the need for some travel by the minor, the Court is persuaded that her ability to choose where to have her case heard is more conducive balancing her needs for anonymity and relative convenience. Indeed, on the one occasion that this circuit dealt with a similar venue restriction, it found that the restriction would stand only because the law at issue allowed minors to go not only to a court in their home county but also in "any county that borders to any extent the county in which she has a residence or legal settlement." *Akron Center for Reproductive Health v. Slaby*, 854 F.2d 852, 866 (6th Cir. 1988), *rev'd on other grounds, Akron II*, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990). Such freedom is required in order to satisfy the undue burden standard.

### 4. De novo hearing by circuit court

■ In the event that a minor's bypass petition is denied by the juvenile court, she may appeal to the circuit court. Under Tenn.Code Ann. § 37–10–304, "[t]he appeal shall be de novo to the circuit court for the county in which the juvenile court is located." Rule 24 supplements the statute by vesting the circuit court with discretion to "hear the case de novo on the record, or require the witnesses, or some of them, to testify in person. The court may also hear additional witnesses in its discretion." Tenn.Sup.Ct.R. 24(12)(d). Consequently, a court may compel a minor to appear before it in the appeal proceedings.

---

9.  *See* note 5, *supra*.

The Court agrees with Plaintiff that the *de novo* hearing provision is likely to be found unconstitutionally burdensome. Because of the threats to the minor's confidentiality posed by trips to a courthouse, as outlined *supra*, the Court is wary of requiring pregnant minors to schedule and make yet another trip. The Court concedes that the State is correct that the judicial bypass procedure is inherently stressful, and unavoidably so. Indeed, the Supreme Court explicitly noted in *Hodgson v. Minnesota*, 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990), that the bypass hearing "produced fear, tension, anxiety, and shame among minors." *Id.* 497 U.S. at 441. The evidence presented by Plaintiff confirms that this experience is shared by Tennessee minors. Simpson Decl., at ¶ 24. However, Tennessee's provision goes beyond the single visit to court that has been approved by the Supreme Court.

The State has presented no countervailing interest which is advanced by forcing a young woman to repeat the traumatic experience of speaking before a judge about her abortion decision and her family situation. It attempts to claim that such a hearing actually is in the minor's interests, citing the Fourth Circuit's recent decision upholding an analogous provision in *Manning v. Hunt*, 119 F.3d 254, 274–75 (4th Cir.1997). The *Manning* court concluded that a second hearing constitutes a "bonus, not a burden." *Manning*, at 274.

This Court simply rejects *Manning*'s reasoning. First, to argue that the second court appearance is necessary to help a minor receive an adequate hearing implies that the circuit court is incapable of fairly assessing such petitions if only provided with the written record. This Court cannot make such a conclusion. *See Ohio v. Akron Center for Reproductive Health*, 462 U.S. 502, 515, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (*Akron I* ). Moreover, the demonstrated record in this case is that the second hearing is most assuredly a burden. If a minor were to have the option of *choosing* a personal appearance, perhaps then the provision would more provide a more meaningful "second bite at the apple," *Manning*, at 274, just as a minor's

ability to choose her venue provides significant benefits.

### 5. Physician consultation

■ The Model Petition provided by Rule 24 states that a prerequisite for filing a bypass petition is that a minor "has consulted with the physician who is to perform the abortion, or with a referring physician." Tenn.Sup.Ct.R. 24 App., Model Petition ¶ 4. The Court concludes that this provision poses an undue burden to most minors.

As noted *supra*, the Court finds the imposition of any additional obligations upon a minor seeking a bypass—beyond her filing of the initial petition, her appearance in support of that petition, and her abortion appointment—to be suspect. Plaintiff has presented substantial evidence to assist the Court in understanding the extent of the physician consultation burden in particular. Because of the shortage of abortion providers and the cost of physician salaries, clinics are not staffed full-time by physicians. Consequently, most abortion patients receive their pre-abortion counseling from a health professional other than the physician performing the procedure. Thus, Rule 24 requires a pregnant teen to arrange a meeting with a second person to receive identical information before applying for her judicial bypass. A minor will either have to risk exposure by visiting her local "referring" physician for this sensitive information, Lloyd Decl., at ¶ 9, or she will have to contact a physician unknown to her. Given the patchwork schedules of abortion providers—who usually work only a few days a week at a clinic and work other days at hospitals or in private practice—minors will have extreme difficulty tracking down the doctor whom they will eventually see for the abortion. Simpson Decl., at ¶ 13–14; Butler Decl., at ¶ 13–15. Thus, this provision of the Act suffers from the same defects as the twenty-four-hour rule, the venue requirement, and the *de novo* provision by requiring a minor to make and receive multiple phone calls.

The fact that a challenge to the informed consent provision under Tennessee's general abortion statute is still pending is irrelevant here. That provision states, in relevant part: "[A]n abortion shall be performed or induced upon a pregnant woman only after she has been orally informed by her attending physi-

cian of the ... [n]umerous benefits and risks [that] are attendant either to continued pregnancy and childbirth or to abortion." Tenn. Code Ann. § 39(b) and (b)(6).[10] While such a provision would clearly be applicable, if upheld, to minors as well as to adult women, the physician consultation requirement created by Rule 24 poses a separate constitutional question: will it be possible for a minor to schedule a separate visit with an attending physician in order to receive the requisite medical information? State's counsel conceded at oral argument that the Rule's requirement presents an issue of the timing of the physician's remarks, not of the substance. It is just such timing that is constitutionally problematic for minors seeking to avoid parental notice of their abortions. The ability of this population to conform with Section 5(a)(iii) of Rule 24, and not the ability of adult women or some other group, is the key inquiry here. *See Planned Parenthood v. Casey,* 505 U.S. 833, 894, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Thus, the Court refuses to abstain from issuing a ruling on this provision.

### B. Irreparable harm

Having concluded that all of the Plaintiff's challenges to the Act's provisions are likely to succeed on their merits, this Court need not proceed further with its inquiry in order to grant injunctive relief. *Planned Parenthood Ass'n v. McWherter,* 716 F.Supp. 1064, 1066 (M.D.Tenn.1989). However, the Court is prompted by the fundamental nature of the rights at issue here to briefly state its position on the remaining elements of the preliminary injunction test.

A minor who seeks to obtain abortions without parental consent does so for a variety of reasons, all of them compelling: she may fear that she will be physically or emotionally abused, that she will be forced out of the family home, or that she will be forced to continue the pregnancy. Although all young women should ideally consult a parent before undergoing the emotional and physical experience of abortion, the Supreme Court has recognized that while "the unique nature and

consequences of the abortion decision make it inappropriate 'to give a [parent] an absolute, and possibly arbitrary, veto.'" *Bellotti v. Baird,* 443 U.S. 622, 643, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1978) (*Bellotti II*) (*quoting Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976)). The consequences of denying a minor the ability to circumvent such a veto, then, necessarily has "grave and indelible" consequences. *Bellotti II,* 443 U.S. at 642.

■ As noted *supra,* the implementation of the Act's five challenged provisions would unduly burden minors' ability to obtain abortion care without parental consent. Such a deprivation, in itself, constitutes irreparable harm. *Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981); *Doe v. Charleston Area Med. Ctr.,* 529 F.2d 638, 644 (4th Cir.1975); *Pilgrim Med. Group v. New Jersey State Bd. of Med. Examiners,* 613 F.Supp. 837, 848–49 (D.N.J.1985); *see also Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (even temporary loss of constitutional rights constitutes irreparable harm). Under these provisions enjoined by the Court today, minors may compromise their confidentiality or, fearing the same, forgo utilization of the bypass procedure. Either harm constitutes irreparable injury, whether abuse, forced pregnancy, or delayed abortion occur as a result. All of these harms are "irreversible and not compensable." *Pilgrim Med. Group,* 613 F.Supp. at 848–49; *see also Williams v. Zbaraz,* 442 U.S. 1309, 1314–15, 99 S.Ct. 2095, 60 L.Ed.2d 1033 (1979) (Stevens, J.) (denying stay) (ruling that increased risk of morbidity and mortality due to later-term abortion provided "support for plaintiffs' claims of irreparable injury"). The Court is especially cognizant of the burdens placed upon immature or incapacitated minors when access to a bypass, and to abortion, is hindered.

■ Finally, the Court rejects the State's contention that because this is a facial, rather

10. A state circuit court ruled in 1992 that this provision is constitutional, *Planned Parenthood of Nashville, Inc. v. McWherter,* No. 92C–1672 (November 19, 1992), and plaintiffs filed an appeal.

Oral arguments were heard by the Tennessee Court of Appeals in June, 1996, and a decision has not been rendered.

than an as-applied challenge, the Plaintiff's evidence is not sufficiently linked with the provisions at issue in the Act. Plaintiff's evidence is typical of that which is provided in such cases. *See Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). It is not required that young women themselves attest to the difficulty they face in complying with the Act's provisions; abortion providers are the most expert among us as to how laws affecting patients' access will function in practice.

## C. Impact on the public interest and countervailing harm to others

The Court is cognizant of the significant constitutional interests at stake in protecting the relationship parents enjoy with their children, particularly in regard to abortion. *See, e.g., Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (noting that States have a "significant" interest in regulating abortion in regard to children "that is not present in the case of an adult"). However, the consistent holdings of the Supreme Court indicate that parental rights "must give way to the constitutional right of a mature minor or of an immature minor whose best interests are contrary to parental involvement." *City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 427 n. 10, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (*Akron I*) (and cases cited therein). When presented with substantial evidence, as is the case here, that significant numbers of minors will be thwarted in their efforts to circumvent a parental consent rule, the minors' interests must prevail. The State is not able to prove that the substantial physical and emotional harm likely to result to Tennessee minors in the absence of an injunction here is outweighed by any countervailing interest; nor is it able to prove that such irreparable harm is in any way consistent with the public interest.

## III. Discussion—Severance of Enjoined Provisions

The State urges that if this Court grants the Preliminary Injunction, it should be only as to the challenged provisions. The rest of the Act, and the Rule which modifies it, the State argues, should be permitted to remain in place. Plaintiff contends that because neither the Act nor the Rule contains an explicit severability clause, severance is inappropriate here.

According to the Supreme Court, state law governs the question of severability. *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Thus, Tennessee's doctrine of elision will apply here. The doctrine states that severability of objectionable provisions of a statute is appropriate when the provisions are "incidental and subordinate and can be stricken without impairing the efficacy of the act." *Moore v. Fowinkle,* 512 F.2d 629, 632 (6th Cir.1975) (citations omitted). It is the well-settled law in Tennessee that the "doctrine of elision is not favored." *Lowe's Companies, Inc. v. Cardwell,* 813 S.W.2d 428, 430 (Tenn.1991) (*quoting Gibson County Special Sch. Dist. v. Palmer,* 691 S.W.2d 544, 551 (Tenn.1985) (citation omitted)). Rather, for a court to conclude what the legislature's intentions would have been regarding removal of the objectionable portions, in the absence of clear indication from the "face of the statute," would amount to "judicial legislation." *Davidson County v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1, 2 (1950).

The Court is not aware of a case dealing with the doctrine's application to a state Supreme Court rule modifying a statute, such as is the case here. However, because the statute explicitly provides for the Supreme Court's modification, Tenn.Code Ann. § 37–10–304(g), it sees no reason to treat such rules as legally different from the statute being modified. *Cf. Memphis Planned Parenthood, Inc. v. Sundquist,* No. 89–0520, slip op. at 10 (M.D.Tenn. July 9, 1996) (finding that rules promulgated by Supreme Court modifying abortion consent statute inextricably linked with statute itself).

Courts have most typically examined the challenged statute for a severability clause, or another explicit indication that severability of certain provisions is proper, in making the elision judgment. *See, e.g., Lowe's Companies,* 813 S.W.2d at 431 (and cases cited therein); *Franks v. State,* 772 S.W.2d 428, 430 (Tenn.1989); *cf. State ex rel. Barker v. Harmon,* 882 S.W.2d 352, 355 (Tenn.1994)

(denying elision because statute at issue did not contain severability clause). Neither the original Act nor Rule 24 contain a severability provision. Without a more explicit indication from the legislature and the Supreme Court that these portions of the Act are "incidental and superfluous" to the statute's purpose, this Court will not take the disfavored action of eliding the enjoined portions.

### IV. Conclusion

For the foregoing reasons, the Court hereby grants Plaintiff's Motion for Preliminary Injunction. An Order consistent with the reasoning set forth above is filed contemporaneously.