UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

RELIANCE INSURANCE
COMPANY, a Pennsylvania
corporation,

Plaintiff - Appellant,

v.                                                                    No. 97-4140

MAST CONSTRUCTION
COMPANY, a corporation; MAST
INDUSTRIAL, INC., a corporation;
RONALD EARL MAST; LINDA M.
MAST, individually and as trustees of
the Ronald E. Mast Living Family
Trust, aka Aremeco Management Co.;
HARDWARE SPECIALTIES, INC., a
corporation; ROGER J. MAST;
MARIE G. MAST; CHRISTOPHER
MAST, individuals,

Defendants,

and

FIRST SECURITY BANK OF UTAH,
N.A.,

Defendant - Appellee.

ORDER

Filed November 5, 1998

Before **BALDOCK, MAGILL,**[*] and **HENRY,** Circuit Judges.

---

This matter is before the court on defendant-appellee's petition for rehearing. The court's opinion originally filed on August 3, 1998, has been amended in response to the rehearing petition. The petition for rehearing is denied in all other respects. The amended opinion and dissent is attached.

Entered for the Court
PATRICK FISHER, Clerk of Court


by:

Keith Nelson
Deputy Clerk

---

[*]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 5 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RELIANCE INSURANCE
COMPANY, a Pennsylvania
corporation,

      Plaintiff - Appellant,

  v.

MAST CONSTRUCTION
COMPANY, a corporation; MAST
INDUSTRIAL, INC., a corporation;
RONALD EARL MAST; LINDA M.
MAST, individually and as trustees of
the Ronald E. Mast Living Family
Trust, aka Aremeco Management Co.;
HARDWARE SPECIALTIES, INC., a
corporation; ROGER J. MAST;
MARIE G. MAST; CHRISTOPHER
MAST, individuals,

      Defendants,

   and

FIRST SECURITY BANK OF UTAH,
N.A.,

      Defendant - Appellee.

No. 97-4140

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. CIV-88-947-S)

---

David W. Slaughter (Judith D. Wolferts, with him on the brief), Snow, Christensen & Martineau, Salt Lake City, Utah, for Plaintiff-Appellant.

James S. Jardine (Steven H. Gunn, with him on the brief), Ray, Quinney & Nebeker, Salt Lake City, Utah, for Defendant-Appellee.

Before **BALDOCK, MAGILL,**[*] and **HENRY,** Circuit Judges.

**MAGILL,** Circuit Judge.

Reliance Insurance Company (Reliance) moved for civil contempt damages against First Security Bank of Utah (First Security), alleging that First Security helped one of its depositors violate a temporary restraining order. The district court granted summary judgment to First Security, and this Court reversed and remanded with instructions to the district court to make findings on certain disputed issues. See Reliance Ins. Co. v. Mast Constr. Co., 84 F.3d 372 (10th Cir. 1996). On remand, the district court held that Reliance could not prevail on any of these issues. We reverse and instruct the district court to conduct a full factual adjudication in accordance with the directions set forth below.

---

[*]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I.

Ronald Mast was a major depositor at First Security, with over $1.85 million in a First Security account in the name of Mast Construction Company (Mast Construction), a general contracting company. Mast was president of Mast Construction and had signing authority over the Mast Construction account. Reliance issued performance and payment bonds on Mast Construction's behalf for several public construction projects on which Mast Construction served as general contractor. In early October 1988, Reliance began receiving alarming numbers of claims on its bonds by unpaid suppliers and subcontractors. On October 17, 1988, fearing substantial losses on its bonds but unaware of the extent of Mast's holdings, Reliance obtained a temporary restraining order (First TRO) against Mast, Mast Construction, and Mast's wife, Linda Mast (the Mast defendants), enjoining the transfer of their assets "other than in the normal course of business." T.R.O. and Order to Show Cause (Oct. 17, 1988) at 2, reprinted in Appellant's App. at 133. A copy of the First TRO was hand delivered to, and accepted by, the branch manager of First Security's First South Branch on October 19, 1988.

According to Mast, once he learned "[t]hat there was a freeze put on my money," he decided that he "better go for the mother load and put it in a safe spot." Dep. of Ronald Mast at 38-39, reprinted in Appellant's App. at 442-43. On

October 20, 1988, the day after the First TRO was delivered to First Security, Mast went to First Security's Ivy Place Branch and withdrew the entire balance of Mast Construction's $1.85 million account. The withdrawal was handled by Kraig Murdock, the Ivy Place Branch manager, and the checks were signed by Mast and deposited into new First Security accounts in the names of two companies, REMCO Construction, Inc. (REMCO), and U.S. General, Inc. (U.S. General). Murdock, who had solicited Mast's business on behalf of First Security and had some familiarity with Mast Construction's operations, knew that Mast Construction, REMCO, and U.S. General were "basically interrelated businesses." Dep. of Kraig Murdock at 52, reprinted in Appellant's App. at 201. Reliance, however, did not learn about the REMCO or U.S. General accounts until the spring of 1989.

Reliance obtained an extension and amendment to the First TRO on October 21, 1988 (Second TRO). The Second TRO ordered:

> That a judicial lien be and hereby is placed and imposed upon all assets and property, including realty, personalty and mixed, accounts of deposit, contract rights, accounts receivable, equipment and all other property, without limitation, owned by [the Mast defendants], and all property in which said defendants have or maintain an interest, and that none of such funds, assets or other property shall be paid, sold, transferred, liened or encumbered without prior Court approval, for good cause showing and upon hearing following not less than one day's notice.

-4-

T.R.O. and Order to Show Cause (Oct. 21, 1988) at 3, reprinted in Appellant's App. at 146. According to Reliance, the Second TRO was hand delivered to First Security's First South Branch on October 21, 1988, but a bank officer refused service and directed service to be made at First Security's Central Operations Office. Reliance further contends that service of the Second TRO was made at the Central Operations Office on the next business day, October 24, 1988. First Security, however, contends that the Second TRO was not actually delivered until sometime between October 28 and October 31, 1988.

On October 25 and October 26, 1988, Mast successfully liquidated all of the Mast Construction funds that remained in the REMCO and U.S. General accounts at First Security. Mast withdrew a series of cashiers checks from the REMCO and U.S. General accounts. Each of these checks was signed by Murdock and was made payable to Mast personally. Most of these checks were either cashed by Mast or used to purchase gold coins. The remaining checks were deposited in newly-created accounts at First Security and other banks, and were subsequently used by Mast either to draw checks payable to himself, or to open even more new accounts. Reliance also contends that, in November 1988, First Security sold to Mast over $394,000 in gold coins and allowed Mast to use funds from the cashiers checks to pay for the gold.

The Second TRO, which was initially set to expire on October 31, 1988, was extended by the district court on seven different occasions. Reliance and the Mast defendants stipulated to several of these extensions. All of the extensions were phrased in a similar fashion, and provided that the "Temporary Restraining Order entered on October 21, 1988, be and hereby is extended, to expire" at the given time and date. Extension of T.R.O. (Oct. 31, 1988) at 2, reprinted in Appellant's App. at 150. The district court finally conducted a hearing on December 22, 1988. At that hearing, the Second TRO was superseded by an injunction prohibiting the Mast defendants "from making fraudulent conveyances or hiding assets from creditors" and from "fraudulently convey[ing] their assets to family members or family corporations so as to defeat the claims of creditors." Order (Jan. 30, 1989) at 2, reprinted in Appellant's App. at 170.[1] In May 1989, the district court appointed a receiver over all Mast Construction property and enjoined the Mast defendants from "conveying, selling, trading, transferring, secreting, [or] encumbering their assets" without a court order or stipulation from

---

[1]At the December 22, 1988 hearing, the district court "authorize[d] an injunction to continue in place which will bar the defendant from making any fraudulent conveyance or marshaling of any assets for the purpose of hiding them from use by the creditors for appropriate payment of debts." Tr. of Hr'g (Dec. 22, 1988) at 68, reprinted in Appellant's App. at 833. The written order is dated January 30, 1989. First Security does not contend that the delay between the hearing and the issuance of the written order affected any obligation it had to abide by the injunctive order.

Reliance.  Order for Appointment of a Receiver and for Prelim. Inj. (May 17, 1989) at 4, reprinted in Appellant's App. at 175.

In February 1991, Reliance sought civil contempt damages against First Security, in the amount of $1.85 million.  The crux of Reliance's claim was that First Security actively participated in the dissipation of the Mast Construction funds by allowing Mast to transfer funds with impunity, in violation of the injunctive orders issued in this case.  In April 1994, the district court granted summary judgment to First Security on the civil contempt claim.

On appeal, this Court reversed.  We first held that the termination of the Second TRO in December 1988 did not preclude Reliance from seeking a civil contempt judgment based upon violations of the order during the period of its validity.  Reliance, 84 F.3d at 376.  We then held that the First TRO was insufficiently specific under Federal Rule of Civil Procedure 65(d) to support a civil contempt judgment, but that First Security could be held in contempt as a nonparty to the Second TRO for aiding and abetting Mast in violating the Second TRO.  Id. at 376-77.  However, given the lack of findings on relevant points, we remanded for further proceedings and set forth four questions to guide the district court's inquiry: (1) whether the Second TRO was sufficiently clear and unambiguous to be enforceable; (2) whether the Second TRO remained valid at the time of the transactions; (3) whether First Security had actual notice of the

Second TRO at the time of the relevant transactions; and (4) whether Reliance could demonstrate actual damages.  Id. at 377.

On remand, the district court ruled in First Security's favor on all four issues.  The district court first held that the Second TRO "was overbroad and ambiguous in its reference to transfers from accounts 'in which said defendants have or maintain an interest,'" because "[t]he Order does not specify whether 'interest' means actual ownership of the account itself or interest in the sense of control or beneficial ownership," and it therefore "may be difficult, if not impossible," to identify the accounts in which the Mast defendants held an interest.  Mem. and Order (July 16, 1997) at 2, reprinted in Appellant's App. at 822.  The district court then held that the Second TRO was not validly extended beyond its initial October 31, 1988 expiration date, because the various extensions "attempted to extend the Second TRO by reference to it, but did not contain the operative injunctive language of the Order."  Id. at 3, reprinted in Appellant's App. at 823.  Next, the district court held that service of the First TRO on First Security did not place First Security on implied or inquiry notice of the issuance of the Second TRO; Reliance therefore could not show by clear and convincing evidence that First Security had actual notice of the Second TRO prior to the withdrawals on October 25 and October 26, 1988.  Id. at 3-4, reprinted in Appellant's App. at 823-24.  Finally, the district court held that Reliance could

not prove damages by clear and convincing evidence because the termination of the Second TRO on December 22, 1988 left the Mast defendants "free to withdraw and transfer the funds prior to the time when Reliance" discovered the REMCO and U.S. General accounts in the spring of 1989. Id. at 4, reprinted in Appellant's App. at 824. Reliance now appeals.

## II.

We review the district court's denial of a civil contempt motion for an abuse of discretion. V.T.A., Inc. v. Airco, Inc., 597 F.2d 220, 226 (10th Cir. 1979). In doing so, "we review the district court's conclusions of law de novo and any findings of fact for clear error. Abuse of discretion is established if the district court's adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact." Reliance, 84 F.3d at 375-76 (citation omitted).

To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, id. at 377, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order. Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995).

Federal Rule of Civil Procedure 65(d) guides our determination of whether the Second TRO and its extensions were valid.  Rule 65(d) requires injunctions and restraining orders to describe the enjoined conduct in reasonable detail without merely referencing the complaint or other document, and binds nonparties in active concert or participation with parties if they "receive actual notice of the order by personal service or otherwise."  Fed. R. Civ. P. 65(d).[2]  We examine each issue in turn.

Specificity of the Second TRO

Whether the Second TRO's description of the enjoined conduct was sufficiently specific under Rule 65(d) is a question of law which we review de novo.  Premier Communications Network, Inc. v. Fuentes, 880 F.2d 1096, 1100 (9th Cir. 1989).  "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a

_____

[2]Rule 65(d) states:

> Every order granting an injunction and every restraining order . . . shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action . . . and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed. R. Civ. P. 65(d).

contempt citation on a decree too vague to be understood." Schmidt v. Lessard, 414 U.S. 473, 476 (1974) (per curiam). Accordingly, an injunction "cannot be so general as to leave the party open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and thus make him vulnerable to prosecution for contempt." Williams v. United States, 402 F.2d 47, 48 (10th Cir. 1967).

First Security contends that the Second TRO, which placed a judicial lien on "all assets and property . . . owned by [the Mast defendants], and all property in which said defendants have or maintain an interest," T.R.O. and Order to Show Cause (Oct. 21, 1988) at 3, reprinted in Appellant's App. at 146, is invalid under Rule 65(d) because the word "interest" is ambiguous when used to describe rights in a bank account. We disagree. When read in light of the injunctive order as a whole, see Common Cause v. Nuclear Regulatory Comm'n, 674 F.2d 921, 927 (D.C. Cir. 1982) (considering text of order and context of litigation to determine whether order is sufficiently specific), the term "interest" refers to any property right short of full ownership. See Black's Law Dictionary 812 (6th ed. 1990) ("interest" defined as "any right in the nature of property, but less than title"); cf. Evans v. United States, 349 F.2d 653 (5th Cir. 1965) (the term "proprietary interest" is "not so technical, or ambiguous, as to require a specific definition"). Because Murdoch, the First Security branch manager who handled the liquidation

of the REMCO and U.S. General accounts, knew of the interrelatedness of Mast's corporate entities, and allowed Mast to withdraw the entirety of the REMCO and U.S. General corporate accounts in cashiers checks payable to Mast personally, First Security could not have harbored any genuine doubt as to whether Mast held an "interest" in the REMCO and U.S. General accounts. See Williams, 402 F.2d at 48 ("In this posture it is difficult to term appellant's argument that the injunction is inoperative from lack of specificity as more than self-denying." (footnote omitted)); cf. Drywall Tapers and Pointers, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Int'l Ass'n, 889 F.2d 389, 395-96 (2d Cir. 1989) (defendant's conduct can demonstrate lack of ambiguity in injunctive order).

First Security further argues that Rule 65(d) required Reliance to identify, by name, each of the accounts it sought to enjoin. We disagree. Such a rule would have made it impossible for Reliance to prevent Mast from hiding the Mast Construction funds in accounts that were not yet discovered by Reliance, and thus could not be named in an injunction. Rule 65(d) requires only that the enjoined conduct be described in reasonable, not excessive, detail--particularly in cases like this when overly precise terms would permit the very conduct sought to be enjoined. See Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1431-32 (7th Cir. 1985) (Rule 65(d) "does not require the impossible. There is a limit to

what words can convey. . . . The right to seek clarification or modification of the injunction provides assurance, if any be sought, that proposed conduct is not proscribed.").  The Second TRO was therefore sufficiently specific under Rule 65(d) to place First Security on reasonable notice of the accounts affected by the Second TRO.

First Security also argues that compliance with the Second TRO was impossible because it lacked the ability to freeze the accounts in which Mast held an interest.  Whether First Security was capable of complying with the order is a defense to contempt.  See Donovan v. Burgett Greenhouses, Inc., 759 F.2d 1483, 1486 (10th Cir. 1985) (after prima facie case is shown, "the defendant could avoid a contempt adjudication by showing through clear and convincing evidence that he was unable to meet the requirements of the injunction").  The district court failed to make any specific findings on this point, concluding only that "it may be difficult, if not impossible, for a bank to determine what 'interests' may be held in an entity in whose name an account is established." Mem. and Order (July 16, 1997) at 2 (emphasis added), reprinted in Appellant's App. at 822.  Accordingly, while we hold as a matter of law that the Second TRO's terms were sufficiently specific under Rule 65(d), we must remand for factual adjudication on the question of whether First Security was incapable of complying with the Second TRO.

<u>Validity of Extending the Second TRO by Reference</u>

Rule 65(d)'s specificity requirements also determine whether the Second TRO was validly extended, and thus in effect at the time of withdrawals occurring after October 31, 1988. Rule 65(d) prohibits "restraining orders" from describing "by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). Whether the district court erred in holding that the extensions to the Second TRO were invalid because they incorporated the Second TRO's operative language by reference is a question of law which we review de novo. <u>Combs v. Ryan's Coal Co.</u>, 785 F.2d 970, 978 (11th Cir. 1986).

We hold that the extensions of the Second TRO's expiration date were not rendered invalid by failing to restate the operative language of the Second TRO. Because the extensions merely altered the order's expiration date without modifying the conduct enjoined, the extensions were simply not "restraining orders" subject to the requirements of Rule 65(d). By describing in reasonable detail the conduct to be enjoined, the Second TRO itself satisfied Rule 65(d)'s twin purposes of preventing confusion on the part of those bound by injunctive orders and assisting the appellate court in defining the bounds of injunctive relief. <u>Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.</u>, 84 F.3d 367, 371 (10th Cir. 1996). Accordingly, if Reliance can demonstrate that First Security had actual

notice of the Second TRO and all the extensions thereto, the extensions would not have run afoul of Rule 65(d).

Actual Notice

Under Rule 65(d), the Second TRO is binding only on those nonparties "who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). The district court rejected as a matter of law Reliance's argument that First Security had actual knowledge of the Second TRO by virtue of its knowledge that the First TRO had been amended. Mem. and Order (July 16, 1997) at 3-4, reprinted in Appellant's App. at 823-24. Because the district court failed to address factual disputes concerning whether First Security received the Second TRO on October 24, 1988, or whether First Security wrongfully refused service of the Second TRO on October 21, 1988, we must remand for a factual adjudication of these issues.

First, Reliance presented sufficient evidence to raise a question of fact as to whether the Second TRO was hand delivered to First Security's Central Operations Office on October 24, 1988. The log book and affidavit of the delivery courier of Reliance's counsel state that delivery was made on October 24. First Security argues that the Second TRO was not delivered until sometime between October 28 and October 31, because its Central Operations Office subpoena log book contains an undated entry showing receipt of the Second TRO

between documents listed as received on those dates. However, Reliance has presented evidence that, if true, would undermine the reliability of the log book by illustrating that documents were not always entered in the order they were received. Specifically, Reliance points to at least three documents entered as received between October 28 and October 31 whose contents demonstrate that they must have been delivered at an earlier date. Accordingly, Reliance has raised a genuine issue of material fact concerning the actual date that the Second TRO was delivered. Because "[a] party who seeks enforcement of an injunction through the medium of civil contempt is . . . entitled to the resolution of genuine issues of material fact that bear upon the allegations by which it seeks to support a finding of contempt," Rockwell Graphic Sys., Inc. v. DEV Indus., Inc., 91 F.3d 914, 920 (7th Cir. 1996), we must remand to the district court for factual adjudication on this issue.

Second, Reliance raised a fact question concerning whether First Security's refusal of service of the Second TRO on October 21 satisfied Rule 65(d)'s requirement that nonparties have actual notice by "personal service or otherwise." Fed. R. Civ. P. 65(d). Because "personal service should not become a degrading game of wiles and tricks nor should a defendant be able to defeat service simply by refusing to accept the papers," Wood v. Weenig, 736 P.2d 1053, 1055 (Utah Ct. App. 1987) (quotations omitted), it is well-settled that the effect of a written

-16-

notice cannot be avoided by refusing service of that notice.  See Nikwei v. Ross Sch. of Aviation, Inc., 822 F.2d 939, 946 (10th Cir. 1987) ("a defendant cannot refuse or avoid service on a technical ground, and then exclaim he has not been correctly served"); see also 58 Am. Jur. 2d Notice § 33 (1989) ("A party may not escape the effect of the giving of a written notice by refusing to receive it when it is presented in person as a notice. . . . A person who refuses a notice is simply deemed to have knowledge of its contents.").  In other contexts, courts have found actual notice when a party wrongfully refuses service, see Patmon and Young Prof'l Corp. v. Commissioner, 55 F.3d 216, 218 (6th Cir. 1995) (actual notice requirement for tax deficiency assessment satisfied by refusal of certified mail, noting that "a taxpayer should not be allowed to defeat actual notice by deliberately refusing delivery of the IRS's deficiency notice"); Erhard v. Commissioner, 87 F.3d 273, 274-75 (9th Cir. 1996) (same), and we similarly will not read Rule 65(d) as permitting a nonparty to evade compliance with an otherwise valid court order simply by refusing service.

Accordingly, we must remand to the district court with instructions to conduct a factual adjudication on whether service of the Second TRO was validly made on October 24, 1988, or wrongfully refused on October 21, 1988.  Furthermore, because no findings were made on this point, the district court is

specifically instructed to determine whether First Security had actual notice of the extensions to the Second TRO, in accordance with Rule 65(d).

Damages

Civil contempt may be used "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance" with a court order. O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1211 (10th Cir. 1992) (quotations omitted). The district court held that "Reliance cannot show by clear and convincing evidence that First Security's acts or omissions caused damage to Reliance," because the Second TRO's December 22, 1988 expiration left the Mast defendants "free to withdraw and transfer the funds prior to the time when Reliance received notice of the existence of the First Security accounts in 1989." Mem. and Order (July 16, 1997) at 4, reprinted in Appellant's App. at 824. We first point out that the district court utilized the wrong standard of proof. In a civil contempt proceeding, once a plaintiff has established the elements of contempt by clear and convincing evidence, it need only prove damages by a preponderance of the evidence. See In re General Motors Corp., 110 F.3d 1003, 1018 (4th Cir. 1997); Graves v. Kemsco Group, Inc., 864 F.2d 754,755 (Fed. Cir. 1988) (applying Seventh Circuit law). Moreover, the district court's finding is clearly erroneous. On December 22, 1988, the district court enjoined the Mast defendants "from making fraudulent conveyances or hiding assets from creditors"

-18-

and from "fraudulently convey[ing] their assets to family members or family corporations so as to defeat the claims of creditors." Order (Jan. 30, 1989) at 2, reprinted in Appellant's App. at 170. This language was intended to stop the same wrongful conduct alleged in this contempt proceeding: Mast (with First Security's assistance) bleeding his accounts dry for the purpose of evading Reliance's claim upon the funds. See Tr. of Hr'g (Dec. 22, 1988) at 68-69 (district court's statement from the bench that it "is apparent that maybe some of the payments have been made to family corporations or family members that may give the appearance . . . of impropriety. And I will state that . . . there not be any conveyance to family members or to family own[ed] businesses that would in any way be for the purpose of defeating appropriate claims by creditors."), reprinted in Appellant's App. at 833-34. Accordingly, the Mast defendants were prohibited from making these transactions throughout the entire period in dispute, and the district court's apparent indifference to the express language of its own order leaves us with "the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). As we have already held that the assistance First Security provided to Mast in violating the Second TRO is sufficient under Rule 65(d) to hold First Security in contempt, see Reliance, 84 F.3d at 377, we must reverse and remand for the district court to enter factual findings on whether First Security was "in

-19-

active concert or participation" with Mast in violating the December 22 permanent injunction, and on the extent to which such conduct injured Reliance. See Fed. R. Civ. P. 65(d).

## III.

We reverse the district court's holdings that the Second TRO lacked specificity and that the Second TRO's extensions invalidly incorporated the Second TRO by reference. We also remand for a bench trial on the factual issues remaining, as discussed above: (1) whether First Security received actual notice of the Second TRO, either by receipt of the Second TRO on October 24, 1988 or by wrongfully refusing to accept service of the Second TRO on October 21, 1988; (2) whether First Security received actual notice of the extensions to the Second TRO; and (3) whether First Security was in active concert or participation with Mast in violating the permanent injunction issued on December 22, 1988. If the district court resolves these issues in Reliance's favor, it must then allow First Security to present a defense that it was not capable of complying with the Second TRO's terms. If First Security was capable of compliance, but did not do

so, the district court must then conduct a factual determination into the amount of damages Reliance suffered.[3]

Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED for proceedings consistent with this opinion.

---

[3]When determining damages, the district court should remember that First Security cannot be liable for any damages related to its violations of the permanent injunction if it had no notice of that injunction. See Fed. R. Civ. P. 65(d) (injunction "binding only . . . upon those persons . . . who receive actual notice of the order"). Accordingly, it is possible for First Security to defeat any damage award by showing that the money disgorged to the Mast defendants in violation of the Second TRO would ultimately have been disgorged to the Mast defendants in the time period after the Second TRO expired and before First Security was notified of the permanent injunction. See Gemco Latinoamerica, Inc. v. Seiko Time Corp., 61 F.3d 94, 100 (1st Cir. 1995) (explaining that defendant, who defied attachment order requiring it to pay money into court, could defeat a damage award in contempt proceedings by showing that the money would ultimately have been awarded to it had it originally paid the money into court).

No. 97-4140:  Reliance Ins. Co. v. First Sec. Bank

**HENRY**, Circuit Judge, concurring in part, dissenting in part

The district court based its dismissal of Reliance's complaint on four grounds:  (1) the Second TRO did not meet Rule 65(d)'s specificity requirements; (2) the extensions of the Second TRO were invalid; (3) First Security did not receive notice of the Second TRO prior to the transactions in question; and (4) Reliance failed to show "by clear and convincing evidence" that First Security's acts or omissions caused damage to Reliance.  See Mem. and Order (July 16, 1997), reprinted in Appellant's App. at 821-24.  For the reasons set forth in the majority opinion, I agree that the district court erred in reaching its first three conclusions.  Like the majority, I also believe that the district court utilized the incorrect standard of proof in resolving the damages issue.  However, I do depart from the majority opinion on two points.

First, the district court reasoned that Reliance's failure to show damages necessarily precluded a finding of contempt.  The majority opinion does not take issue with this conclusion.  Thus, both the majority and the district court clearly believe that damages are an element of civil contempt.  However, a finding of contempt may stand even when a plaintiff fails to show any damages.  See Gemco Latinoamerica, Inc. v. Seiko Time Corp., 61 F.3d 94, 100 (1st Cir. 1995) (stating that defendant "could arguably defeat the damage award–*although not the finding of contempt*–" by showing that its actions caused no damages to plaintiff)

(emphasis added); <u>Hartman v. Lyng</u>, 884 F.2d 1103, 106 (8th Cir. 1989) (holding that "because [defendant] had a duty to comply with the injunction independently of whatever benefit such compliance would or did confer on plaintiffs," district court's finding of contempt stands even though plaintiffs failed to demonstrate damages) (quotation omitted); <u>United States v. Professional Air Traffic Controllers</u>, 678 F.2d 1, 4-5 (1st Cir. 1982) (vacating fine imposed by district court but ruling that court's "bare finding of civil contempt may stand"). Thus, unlike the majority, I believe that Reliance can prevail even if it fails to prove any damages.

Accordingly, I would hold that the district court erred not only when it concluded that (1) the Second TRO did not meet Rule 65(d)'s specificity requirements; (2) the extensions of the Second TRO were invalid; (3) First Security did not receive notice of the Second TRO prior to the transactions in question; and (4) Reliance was required to show damages by clear and convincing evidence, but that it also erred when it (5) held that First Security could escape a finding of contempt by showing that Reliance had suffered no damages. Consequently, like the majority, I would reverse the district court's dismissal of Reliance's complaint and remand for a bench trial. This bench trial would address the issues specified by the majority in Part III *supra*, with one exception: Unlike the majority, I would not require a bench trial on the question of "whether

First Security was in active concert or participation with Mast in violating the permanent injunction issued on December 22, 1988."

Reliance has never alleged or even suggested that First Security was "in active concert or participation" with Ron Mast in violating the permanent injunction. This is understandable, since it is undisputed that all of the transactions in question took place before the district court entered the permanent injunction. Given this factual backdrop, the court simply could not find First Security liable for civil contempt where any assistance it might have rendered to Mr. Mast pre-dated the court's entry of the permanent injunction.

In sum, I agree with the majority that the district court's dismissal order must be reversed and remanded. However, upon remand, I would limit the bench trial to the questions of whether First Security received timely notice of the Second TRO and the extensions thereof and, if necessary, whether First Security was capable of complying with the second TRO. If Reliance were to prevail on each of these issues, the court should find First Security in civil contempt. Finally, if the court were to find First Security in contempt, I believe it should then conduct a factual determination regarding what damages, if any, Reliance suffered as a result of First Security's violations of the Second TRO, and award Reliance any such damages that it proved by a preponderance of the evidence.