*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0286P (6th Cir.)
File Name: 01a0286p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHAEL BLACKARD and
SHARON BLACKARD, both
individually and as parents,
legal guardians and next
friends for ASHLEY
BLACKARD, a minor,
        *Plaintiffs-Appellants,*

        *v.*

MEMPHIS AREA MEDICAL
CENTER FOR WOMEN, INC.;
FAZEL MANEJWALA, M.D.,
        *Defendants-Appellees.*

No. 00-5326

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-02996—Jon Phipps McCalla, District Judge.

Argued: June 8, 2001

Decided and Filed: August 24, 2001

Before: KENNEDY, SILER, and CLAY, Circuit Judges.

1

_____

## COUNSEL

**ARGUED:**   Robert L. Hutton, GLANKLER BROWN, Memphis, Tennessee, for Appellants.   James L. Kirby, HARRIS, SHELTON, DUNLAP, COBB & RYDER, Memphis, Tennessee, Vickie H. Jones, BLACK & McLAREN, Memphis, Tennessee, for Appellees. Julie E. Sternberg, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Amici Curiae.
**ON BRIEF:**   Robert L. Hutton, GLANKLER BROWN, Memphis, Tennessee, for Appellants.   James L. Kirby, HARRIS, SHELTON, DUNLAP, COBB & RYDER, Memphis, Tennessee, Vickie H. Jones, Michael G. McLaren, BLACK & McLAREN, Memphis, Tennessee, for Appellees. Jennifer Dalven, Louise Melling, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Amici Curiae.

_____

## OPINION

_____

CLAY, Circuit Judge.  Plaintiffs, Michael, Sharon and Ashley Blackard, filed the instant action in the United States District Court for the Western District of Tennessee alleging that Defendants, Memphis Area Medical Center for Women, Inc. ("MCW") and Fazel Manejwala, M.D., violated the Tennessee Parental Consent for Abortion by Minors Act (the "Act" or the "Parental Consent Act"), Tennessee Code Annotated §§ 37-10-301 to -307 (1996). Plaintiffs claim that Defendants performed an abortion on Ashley Blackard, who was then a seventeen-year-old minor, without the consent of her parents, Michael and Sharon Blackard, and assert a battery claim, based on the alleged violation of the Act and common law.  Plaintiffs Michael and Sharon Blackard also asserted a claim for interference with family relations based on the Act.

during the time that the injunction was in effect.  Until such time as the judicial bypass procedure was actually implemented, Tennessee could not constitutionally require minors to obtain parental consent to an abortion, and could not impose civil liability upon persons who failed to comply with the Consent Act.

(J.A. at 685-86.)  We therefore reject Plaintiffs' contention that Defendants failed to obtain the consent of Ashley Blackard's parents at their own peril.

## CONCLUSION

We conclude that the district court properly granted Defendants' motion for relief from a prior order.  The district court did not commit clear error in determining that the Tennessee juvenile courts were in active concert and participation with the ADC, a named Defendant in the *Memphis Planned Parenthood* case, and were therefore enjoined from enforcing the Parental Consent Act and its judicial bypass procedure.  The record also supports the district court's determination that no judicial bypass procedure in fact existed at the time of Ashley Blackard's abortion.  The district court therefore could not, consistent with *Bellotti* and its progeny, hold Defendants liable for failing to obtain the consent of Ashley Blackard's parents prior to her abortion as required by the Parental Consent Act. Accordingly, we **AFFIRM** the district court's order granting Defendants' motion for relief from a prior order and thus the final judgment in this case.

minors with unconsenting parents were required to violate the statute in order to exercise their fundamental right to an abortion.

A second reason that the *Edgar* case is not analogous is that reliance upon a declaratory judgment action is not constitutionally sufficient recourse in the context of abortion. The right to an abortion is constitutionally protected. *See Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 869 (1992). States may impose certain restrictions upon the right to an abortion, but those restrictions may not impose an "undue burden" on a woman's right to receive an abortion. *Id*. at 874. States may constitutionally require minors to obtain a parent's consent to an abortion, but only if the state also provides a judicial bypass procedure by which the minor may obtain judicial consent to an abortion. *See Bellotti v. Baird*, 443 U.S. 622, 643 (1979). To be constitutional, such a bypass procedure must "be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti*, 443 U.S. at 644. It cannot be reasonably disputed that requiring a minor to file a declaratory judgment action in federal court in order to obtain an abortion would not meet the constitutional requirements of expediency or confidentiality. *See, e.g.*, *Planned Parenthood of Southern Arizona v. Lawall*, 180 F.3d 1022, 1027-30 (9th Cir. 1999) (holding that a bypass scheme which did not contain specific deadlines within which the court must rule on the consent request is an "undue burden" on the right to an abortion).

Under *Bellotti*, the constitutionality of Tennessee's parental consent requirement hinged upon the actual implementation of a judicial bypass procedure. The mere theoretical provision of bypass procedure in an enjoined statute is not sufficient. Even though Judge Nixon's preliminary injunction was ultimately overturned, the fact remains that his injunction had the practical effect of preventing the bypass procedure from becoming a reality

On November 19, 1999, the district court entered an order granting Defendants' motion for relief from a prior order denying their respective motions to dismiss ("motion for relief from a prior order"). The district court's November 19, 1999 order held that Plaintiffs could not rely on the Parental Consent Act as a basis for their claims because its enforcement was enjoined at the time that Ashley Blackard obtained her abortion. Although Ashley Blackard's common law battery claim was permitted to go forward, Michael and Sharon Blackard's claims were dismissed. Plaintiffs now appeal from the final judgment arguing that the district court's order granting Defendants' motion for relief from a prior order was erroneous. For the reasons that follow, we **AFFIRM** the district court's November 19, 1999 order and thus the final judgment.

## BACKGROUND

On March 26, 1998, Ashley Blackard, who was seventeen years old at the time, traveled with her boyfriend to MCW to obtain an abortion, which was performed by Defendant Manejwala. Ashley Blackard consented to the abortion procedure, but neither she, Defendant Manejwala, nor Defendant MCW obtained consent for the abortion from Ashley's parents, Michael and Sharon Blackard.[1] In fact, Plaintiffs Michael and Sharon Blackard were unaware that their daughter was pregnant. When they learned of their daughter's abortion approximately six months later, after Ashley Blackard became pregnant again and dropped out of

---

[1] Prior to signing two informed consent forms, Ashley Blackard was informed of the risks and benefits associated with her pregnancy and the abortion. She also viewed a videotape explaining the abortion procedure and discussed the abortion procedure with her counselor.

school, Plaintiffs Michael and Sharon Blackard filed a suit on their own and on Ashley's behalf.[2]

In their diversity action, Plaintiffs alleged that Defendants violated the Parental Consent Act when Defendant Manejwala performed an abortion on Ashley Blackard without her parents' consent. Plaintiffs alleged that a violation of the Act provided Michael and Sharon Blackard with a cause of action for tortious interference with family relations. Plaintiffs also claimed that Defendants committed common law battery and that a violation of the Act constituted *prima facie* evidence of the battery.

The Parental Consent Act, upon which Plaintiffs rely, requires that an abortion facility or physician obtain the written consent of the parent or legal guardian of a minor prior to performing an abortion on that minor. Tenn. Code Ann. § 37-10-303(a). The Act provided that in cases where the minor did not wish to seek the consent of the parent or legal guardian, the minor could petition the juvenile court for waiver of the consent requirement. Tenn. Code Ann. § 37-10-303(b). A violation of the Act is a misdemeanor and *prima facie* evidence of failure to obtain informed consent and of interference with family relations in appropriate civil actions. Tenn. Code. Ann. §§ 37-10-306 to -307.

At the time that Ashley Blackard obtained her abortion, however, there was an injunction in place enjoining the enforcement of the Parental Consent Act, particularly the judicial bypass procedure. The injunction resulted from an action filed in the United States District Court for the Middle District of Tennessee, the Honorable John Nixon, captioned *Memphis Planned Parenthood, Inc. v. Sundquist*, 2 F. Supp. 2d 997 (M.D. Tenn. 1997). This action involved a suit

----

[2] When Ashley Blackard obtained the age of majority, she was added as a plaintiff in her own right. In addition, Plaintiffs amended the complaint to add Defendant Manejwala, whose identity Plaintiffs were not aware of when the suit was initially filed, as a named defendant.

allow this litigation to go forward would be tantamount to fostering an unconstitutional regime.

To support their contention, Plaintiffs cite Justice Stevens' concurring opinion in *Edgar v. Mite Corp.*, 457 U.S. 624, 647 (1982). However, the *Edgar* case is distinguishable from the case at bar. In *Edgar*, Mite brought a suit seeking to enjoin an Illinois law, after it had already violated the law, to avoid prosecution by the state of Illinois. In this case, however, Defendants' relied on a previously issued and enforceable injunction. In addition, whereas *Edgar* involves business rights, this case involves the fundamental right of a female minor to have an abortion. The district court effectively addressed this argument in its order denying Plaintiffs' motion for a new trial:

Apart from the fact that Justice Stevens [sic] views were not endorsed by a majority of the Court, his reasoning in *Edgar* is not controlling for two reasons. The first reasons [sic] is that the Illinois statute made the underlying activity (engaging in corporate take-overs) more difficult, but not impossible to perform without violating the statute. While the preliminary injunction was in effect, individuals who desired to tender a take-over offer without risking violation of the statute needed only to comply with the statute's requirements by registering with the appropriate state entities, giving the required notice, etc.

In the case *sub judice*, however, Judge Nixon's preliminary injunction made it not just difficult, but impossible for some minors (including Ashley Blackard) to receive abortions without violating the statute. As this Court previously found, the effect of Judge Nixon's Order was to prevent the implementation of the Tennessee judicial bypass procedure. Yet, the Consent Act required minors with unconsenting parents to obtain judicial consent prior to obtaining an abortion. This consent was simply impossible to obtain due to the absence of a bypass procedure. In such circumstances,

jurisdiction of the federal courts to issue injunctions and entertain federal questions, including constitutional questions. *See Doud v. Hodge*, 350 U.S. 485, 487 (1956) ("This Court has never held that a district court is without jurisdiction to entertain a prayer for an injunction restraining the enforcement of a state statute on grounds of alleged repugnancy to the Federal Constitution . . . . We hold that the District Court has jurisdiction of this cause.").

The premise underlying Plaintiffs' argument is also erroneous. The requirement that there be state action in the context of constitutional violations refers to government action--state or federal--as opposed to private action. *Dobyns v. E-Systems, Inc.*, 667 F.2d 1219, 1220 n.1 (5th Cir. 1982); Black's Law Dictionary 1407 (6th ed. 1990) (state action refers to "term used in connection with claims under due process clause and Civil Rights Act for which a private citizen is seeking damages or redress because of improper governmental intrusion into his life"). We therefore reject Plaintiffs' second contention.

Lastly, Plaintiffs' argument that even if the injunction was binding on the courts of Tennessee and the bypass procedure did not exist at the time of Ashley Blackard's abortion, Defendants violated the statute at their own peril and cannot now claim blanket immunity from suit is without merit. Plaintiffs argue that "the issuance of Judge Nixon's injunction *at best* acted as a temporary bar to plaintiffs bringing a cause of action, but did not absolve the defendants of liability under the Act." Appellant's Br. at 42 (emphasis in original). Essentially, Plaintiffs are arguing that the parental consent provision of the Act should be enforced against Defendants despite the fact that Ashley Blackard could not seek a judicial waiver of that provision. Such a result, however, would unduly burden a minor's right to an abortion. If there is no judicial bypass procedure in place, neither the minor nor her physician can legally be required to seek parental consent. *See Casey*, 505 U.S. at 899. As Defendants have noted, to

against the Governor of Tennessee, Don Sundquist, Attorney General John Knox Walkup, and the Administrative Director of the Courts ("ADC") Charles Ferrell challenging the constitutionality of the Parental Consent Act. *Id.*

In *Memphis Planned Parenthood*, the plaintiff argued that the Parental Consent Act was unconstitutional because the judicial bypass procedure was flawed inasmuch as it presented substantial issues of the minor's right of confidentiality and an expeditious disposition of her case. 2 F. Supp. 2d at 1000. The plaintiff in that case filed a motion for a preliminary injunction which was granted by the district court. *Id.* at 1009. The preliminary injunction enjoined enforcement of the Parental Consent Act *in toto*, finding that severability was not an option. *Id.* The preliminary injunction, which was effective *nunc pro tunc* August 26, 1997, further provided:

> It is FURTHER ORDERED that, pending further order of this Court, the defendants, their respective officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, are hereby restrained and enjoined from enforcing Tenn. Code Ann. §§ 37-10-301 through 37-10-307, the Parental Consent for Abortions by Minors Act.

(J.A. at 57.)

The defendants appealed to this Court, which reversed the grant of the preliminary injunction on May 5, 1999. *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456 (6th Cir. 1999). After a petition for rehearing *en banc* was denied, the mandate of the Court reversing the grant of the preliminary injunction was issued on August 24, 1999.

On remand to the district court, the *Memphis Planned Parenthood* parties entered into a joint temporary restraining order which prevented the enforcement of the Parental Consent Act until such time as the State of Tennessee could

ensure that the bypass procedure was in accordance with the Act, the Constitution, and the opinion of this Court.

In their respective answers to Plaintiffs' complaint, Defendants alleged that the Parental Consent Act was inapplicable to their case because the *Memphis Planned Parenthood* injunction prevented the enforcement of the Act at the time that Ashley Blackard obtained her abortion. The district court, however, granted a motion by Plaintiffs to strike Defendants' defense insofar as it relied on the *Memphis Planned Parenthood* injunction. Defendants thereafter filed a joint motion to reconsider, contending that the Parental Consent Act could not be applied constitutionally to abortion procedures during the pendency of the *Memphis Planned Parenthood* case because the injunction halted the implementation of the judicial bypass procedure. The district court denied Defendants' joint motion because, based on the record before it, it could not determine whether the Tennessee courts were within the scope of the injunction.

Defendants thereafter filed a motion for summary judgment or, in the alternative, relief from a prior order under Rule 60. The district court asked for and the parties submitted supplemental briefing. Defendants submitted affidavits from Andrew Shookhoff, a juvenile court judge at the time of Ashley Blackard's abortion, who stated that it was his understanding that juvenile court judges did not have the power to hear judicial bypass cases while the injunction was in place. In addition, Defendants submitted an affidavit from the Clerk of the Juvenile Court of Memphis and Shelby County, C.R. "Bob" Martin, who stated that while the court would have accepted for filing petitions for a judicial bypass, the court would not have acted upon those petitions until after the injunction was lifted. Plaintiffs also submitted affidavits, including an affidavit from the current ADC and a juvenile court judge. Plaintiffs' affidavits essentially stated that the ADC did not have supervisory authority over the juvenile court judges.

a state statute unconstitutional; and (3) even if the injunction was binding on the courts of Tennessee, Defendants violated the statute at their own peril and cannot now claim immunity from suit. To the extent that these arguments are credible, and we express no confidence in their credibility, they are misplaced and clearly demonstrate that Plaintiffs misunderstand the rationale of the district court's decision.

Plaintiffs first contend that because neither they nor Defendants were parties to the *Memphis Planned Parenthood* suit, they could not be bound by the injunction issued in that case. This argument clearly misses the point. The district court's ruling did not hold that Plaintiffs or Defendants were enjoined by the injunction. We agree with Plaintiffs' argument that such a ruling would likely offend the principles of due process. *See United States Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 (5th Cir. 1975). However, no such ruling was made by the district court in this case. The district court instead determined that the courts of the State of Tennessee were bound by the injunction and the effect of that injunction was to nullify the judicial bypass procedure of the Parental Consent Act, a constitutionally necessary component of the Act. While the court's ruling that the Act could not be enforced in the absence of the judicial bypass procedure resulted in the dismissal of Plaintiffs Michael and Sharon Blackard's claim, the court did not conclude that Plaintiffs themselves were specifically enjoined. Plaintiffs' argument is therefore misplaced.

Plaintiffs next argue that the district court's injunction could not render the Parental Consent Act unconstitutional because Judge Nixon, the district court judge in *Memphis Planned Parenthood*, was not a state actor. This argument is as equally flawed as the first inasmuch as it represents a fundamental misunderstanding of this case. Plaintiffs' argument suggests that a federal district court could never exercise jurisdiction to enjoin the enforcement of a state law even if it determines that the law is unconstitutional. This logic, however, does not follow from the case law and the

references to the record above.  The second and third contentions are irrelevant.  It is irrelevant that the supplemental briefing order specifically requested briefing on the "in active concert" issue inasmuch as Plaintiffs, if they thought the statements of the affidavits submitted by Defendants were false, nevertheless could and should have presented evidence demonstrating the falsity.  It is equally irrelevant that Ashley Blackard did not actually seek a judicial bypass because even if she had, the evidence demonstrates that the bypass procedure would not have been available to her.

The evidence on the record is sufficient to support the district court's finding that there was no judicial bypass procedure in place at the time that Ashley Blackard obtained her abortion.  Although the judicial bypass procedure existed on paper and in theory, there was no working mechanism by which Ashley Blackard, or any other minor for that matter, could have obtained a waiver of the consent provision during the relevant time period.  Because there was no judicial bypass procedure, the consent provision of the Parental Consent Act cannot constitutionally be enforced against Defendants.  *See Casey*, 505 U.S. at 899.  Therefore, the district court properly concluded that Defendants could not be held liable under the statute for failing to obtain consent from Ashley Blackard's parents prior to performing her abortion.

Despite our belief that the law is clear regarding the outcome of this case, we must nevertheless address the arguments raised by Plaintiffs as to why the preliminary injunction should not be implemented as the court intended.  Plaintiffs argue that the preliminary injunction, which prevented the enforcement of the judicial bypass procedure of the Parental Consent Act, should have no bearing on their case.  They argue that (1) because they and Defendants were not parties to the *Memphis Planned Parenthood* lawsuit, they could not be bound by the injunction, nor could they be collaterally estopped from bringing their claims; (2) the district court is not a state actor and therefore cannot declare

After a review of the record, the district court granted Defendants' motion for relief from a prior order.  In granting Defendants' motion for relief from a prior order, the district court determined that the Tennessee juvenile court system was in active concert with the ADC and was therefore also enjoined from hearing petitions for a waiver of consent under the Act.  The district court also concluded that there was in fact no judicial bypass procedure in effect at the time of Ashley Blackard's abortion.  Accordingly, the district court concluded, the Act could not constitutionally be enforced under *Bellotti v. Baird*, 443 U.S. 622 (1979).  A violation of the Act therefore could not be a basis for Plaintiffs' claims.

The district court's order had the effect of dismissing Plaintiffs Michael and Sharon Blackard from the suit because their claims were based solely on the Parental Consent Act.  Plaintiff Ashley Blackard's common law battery claim, however, remained viable.  On this claim, the case went to trial.  A jury found that Plaintiff Ashley Blackard was a "mature minor" under the laws of Tennessee and that her consent to the abortion procedure was therefore valid.  Plaintiffs filed a motion for a new trial, which was denied.  Judgment was thereafter entered in Defendants' favor.

Plaintiffs now appeal that judgment.  Plaintiffs do not challenge the jury finding that Ashley Blackard was a mature minor under the laws of the state of Tennessee.  Plaintiffs instead argue on appeal that the district court erred in granting Defendants' motion for relief from a prior order and thus preventing them from relying on the Parental Consent Act as a basis for their claims.

### DISCUSSION

#### *Standard of Review*

We review the district court's order granting a Rule 60(b) motion for relief from a prior order or judgment for abuse of discretion.  *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 639 (6th Cir. 2000); *Mfrs.' Indus. Relations Ass'n v. East*

*Akron Casting Co.*, 58 F.3d 204, 207 (6th Cir. 1995). As always, however, we review questions of law *de novo* and questions of fact for clear error. *United States v. Murphy*, 241 F.3d 447, 456 (6th Cir. 2001). The district court's determination that the Tennessee juvenile courts were in active concert with the ADC is a finding of fact which we will only reverse if it is clearly erroneous. *See Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1319 (10th Cir. 1998); *FDIC v. Faulkner*, 991 F.2d 262, 267 (5th Cir. 1993).

### *Analysis*

In *Bellotti v. Baird*, 443 U.S. 622 (1979), the Supreme Court held that while states can require minors to obtain the consent of their parents prior to obtaining an abortion, the state must also provide an alternative by which a minor can go directly to the courts to obtain authorization for the abortion without notifying her parents. Statutes which do not contain an alternative or a judicial bypass procedure or statutes which contain a judicial bypass procedure which unduly burdens the right of a minor to obtain an abortion are unconstitutional. *Bellotti*, 443 U.S. at 639-44.

The district court granted Defendants' motion for relief from a prior order after concluding that, based upon the expanded record, the scope of the *Memphis Planned Parenthood* injunction included the Tennessee juvenile courts. The district court concluded that the reasoning of its earlier decision was flawed in that it thought the injunction only applied to enforcement of the criminal provision of the statute, but later realized that the plain language of the injunction applied to the Parental Consent Act *in toto*. The district court also found that the there was in fact no judicial bypass procedure in place at the time that Ashley Blackard received her abortion. Accordingly, the consent provision of the Act could not be enforced within the parameters of the Constitution and *Bellotti*, which require effective judicial bypass procedures in order to have a constitutionally sound parental consent statute. The district court stated,

There was also additional evidence which supported the district court's conclusion that the judicial bypass procedure did not in fact exist at the time of Ashley Blackard's abortion. After this Court reversed Judge Nixon's order granting the injunction in the *Memphis Planned Parenthood* case, on remand, the parties entered into a joint temporary restraining order (the "joint TRO"). The joint TRO continued to enjoin the enforcement of the Parental Consent Act until such time as the defendants ensured the court that the judicial bypass procedure would be in compliance with the requirements of the Parental Consent Act, the decision of this Court, and the Constitution. The joint TRO further provided that counsel for the defendants would inform the judges that the Parental Consent Act would not become effective until December 15, 1999. Affidavits submitted in support of the joint TRO provided that communication with various entities charged with implementing the Act including the juvenile court system and the Tennessee Department of Children Services indicated that the State of Tennessee was not prepared to implement the judicial bypass procedure required under the Act as of August of 1999. The affidavits showed that some county juvenile courts were either unaware of the judicial bypass procedure or did not currently have the means by which to implement it. In other counties such as Shelby County (Memphis) where the juvenile courts stated that they were ready to implement the judicial bypass procedure, other essential constitutional elements were lacking, such as established policy and procedures or training for the court advocates that were supposed to assist the minors.

Though Plaintiffs failed to contest this evidence in the district court, they now contend that this Court should not consider it. They argue that (1) the district court did not make a finding as to whether there was a judicial bypass procedure in place at the time Ashley Blackard received her abortion; (2) that the supplemental briefing order focused on the issue of whether the juvenile court judges acted in concert with the ADC; and (3) Ashley Blackard never sought a judicial bypass. The first contention is simply not true as clearly indicated by

District of Tennessee and therefore would not have acted upon the Rule 24 judicial bypass petition, nor would the Juvenile Court have acted on the petition.

(J.A. at 422-23) (affidavit of C.R. "Bob" Martin, Court Clerk of the Juvenile Court of Memphis and Shelby County, Tennessee). In addition, Defendants submitted the affidavit of a former juvenile court judge who was an active judge at the time of Ashley Blackard's abortion; this affidavit provided that:

3. Among my responsibilities during my tenure as a judge was presiding over petitions filed by minors seeking waiver of the requirement that they obtain a parent's consent for termination of pregnancy. The requirement that the minor obtain parental consent, and that she be able to petition the juvenile court for a waiver of the consent requirement, was established by the Parental Consent for Abortions by Minors Act, Tenn. Code Ann. §§ 37-10-301 to -307. In particular, the Act conferred upon minors who elected not to seek consent of a parent the right to petition the juvenile court for relief. While on the bench, I presided over a number of bypass hearings pursuant to this law during those periods when the Act was not enjoined.
4. During my time on the bench, I complied with the requirements of the law regarding the Parental Consent for Abortions by Minors Act. On more than one occasion during my tenure, the Act was enjoined by Judge Nixon of the United States District Court. When these injunctions were in effect against the Act, it was my understanding that the juvenile court did not have the legal authority to hear a minor's petitions for judicial waiver of the parental consent requirement.

(J.A. at 535-36) (affidavit of Honorable Andrew J. Shookhoff).

[i]t is clear to the Court, from the record now presented, that Judge Nixon's injunction effectively blocked enforcement of the judicial bypass procedure contemplated by the Consent Act, and that no such judicial bypass procedure existed at the time of Ashley Blackard's abortion. For this reason, the Defendants cannot be charged with violating § 37-10-307 for failing to comply with Tennessee's abortion judicial bypass procedure. . . .

(J.A. at 618.)

Plaintiffs contend that the district court erred in granting Defendants' motion for relief from a prior order. We disagree. The district court did not abuse its discretion in granting Defendants' motion for relief from a prior order. The district court's finding that the Tennessee juvenile courts were in active concert with the ADC was not clearly erroneous. The district court properly found that the juvenile courts were bound by the *Memphis Planned Parenthood* injunction. The district court also properly found that there was no judicial bypass procedure in place at the time that Ashley Blackard received her abortion. Thus, the district court's conclusion that Defendants could not be liable under the Parental Consent Act in the absence of a judicial bypass procedure was proper. Absent the judicial bypass procedure, the Parental Consent Act could not operate to require either Defendants or Ashley Blackard to obtain parental consent prior to Ashley Blackard's abortion. *See Bellotti*, 443 U.S. at 643.

The status of the judicial bypass procedure, i.e., whether it was enforceable, at the time of Ashley Blackard's abortion, turns on the scope of the *Memphis Planned Parenthood* injunction. Contrary to what Plaintiffs would have this Court conclude, if the Tennessee juvenile courts were within the scope of the injunction, the juvenile courts could not ignore the injunction and enforce the Parental Consent Act or its judicial bypass procedure. *Wolff Shoe Co. v. United States*,

141 F.3d 1116, 1122 (Fed. Cir. 1998) ("'[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'") (quoting *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 386 (1980)) (alteration in original). The law is clear that parties bound by an injunction are obligated to abide by that injunction when it is in effect even if it is later determined to be erroneous. We conclude that the Tennessee juvenile courts were within the scope of the *Memphis Planned Parenthood* injunction and could not enforce the statute during the pendency of that injunction.

Federal Rule of Civil Procedure 65(d) governs the scope of a preliminary injunction issued by a federal court. It provides that an injunction,

is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and *upon those persons in active concert or participation with them* who receive actual notice of the order by personal service or otherwise.

Fed. R. Civ P. 65(d). Rule 65(d) "is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). To determine whether a person is one who acts in concert or is identified in interest with the enjoined party, the court must look to the actual relationship between the person enjoined and the person thought to be bound by the injunction. *Id.*

In the instant case, the district court examined the relationship between the juvenile court and the ADC by looking at the statutory relationship between the two. Tennessee Code Annotated § 16-3-803 governs the powers

cases establish, and we reaffirm today, that a State may require a minor seeking an abortion to obtain the consent of a parent or guardian, provided that there is an adequate judicial bypass procedure."). A state statute requiring parental consent does not pass constitutional muster merely because a judicial bypass procedure exists in theory or on paper. An adequate judicial bypass procedure must ensure that the issue of waiver of the parental consent requirement is resolved, including appeals, in a sufficiently anonymous and expeditious fashion to provide an effective opportunity for an abortion to be obtained. *Planned Parenthood of Blue Ridge v. Camblos*, 116 F.3d 707, 710 (4th Cir. 1997) (citing *Bellotti*, 434 U.S. at 643-44).

In the instant case, there was uncontroverted evidence before the district court that no effective mechanism for a judicial bypass existed at the time of Ashley Blackard's abortion. Defendants submitted an affidavit from the clerk of the juvenile court, who stated that,

. . . [d]uring the time that [the *Memphis Planned Parenthood*] injunction was in force and effect, and in compliance with this . . . injunction, the Juvenile Court of Memphis and Shelby County, Tennessee did not implement or operate the judicial bypass procedure provided by the Tennessee Parental Consent for Abortions by Minors Act.
3. To my knowledge, the Juvenile Court of Memphis and Shelby County Tennessee has not heard any judicial bypass petitions since 1995.
4. As the Clerk of the Juvenile Court of Memphis, Shelby County, Tennessee, if a citizen had attempted to file a petition for a judicial bypass of the Parental Consent for Abortions by Minors Act under Tennessee Supreme Court Rule 24 in March 1998 or at any time when the injunction was in effect, I would have accepted the petition for filing. However, as an officer of the court I would have obeyed the above referenced injunctive Order of the United States District Court for the Middle

meaningless where the purpose of the injunction is to prevent the enforcement of a potentially unconstitutional statute.

Plaintiffs argue that the district court's determination that the juvenile courts were in active concert with the ADC was erroneous because the ADC did not have supervisory authority over the juvenile courts. In support of their contention, Plaintiffs submitted two affidavits. The affidavit of the current ADC, Cornelia A. Clark, stated that the ADC had no statutory or other authority to control the juvenile court judges. Plaintiffs also submitted the affidavit of a juvenile court judge, who stated that the ADC, acting alone, did not have supervisory authority or control over juvenile court judges. As the district court concluded, Plaintiffs' definition of "in active concert or participation" is overly narrow and does not comport with the law. It is not necessary that the enjoined party control the third party in order for the third party to be bound by the injunction. The third party is bound by an injunction if that party is identified with the named, enjoined party in interest, in 'privity' with it, represented by it *or* subject to its control. *Regal Knitwear*, 324 U.S. at 14. In the instant case, despite the fact that the ADC may not have supervisory authority or control over the juvenile court judges, the ADC is identified in interest and acts in concert or participation with the state court system including the juvenile court judges. We therefore reject Plaintiffs' argument and conclude that the consent provision of the Parental Consent Act could not be enforced constitutionally where the juvenile court judges were enjoined from enforcing the judicial bypass procedure of the Act.

Furthermore, the district court properly concluded that there was in fact no judicial bypass procedure in place at the time of Ashley Blackard's abortion even if it existed theoretically or on paper. The *Bellotti* principle that a state may not require parental consent before a minor may obtain an abortion in the absence of an adequate judicial bypass procedure has been reaffirmed time and time again. *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 899 (1992) ("Our

and duties of the ADC. Section 16-3-803 provides in pertinent part:

(a) The administrative director of the courts shall work under the supervision and direction of the chief justice and shall, as the chief administrative officer of the state court system, assist the chief justice in the administration of the state court system to the end that litigation may be expedited and the administration of justice improved.

(b) The administrative director of the courts shall serve as secretary to the judicial council, shall perform those duties enumerated in § 16-3-502, and shall attend to such other duties as may be assigned by the supreme court or chief justice thereof. As secretary to the judicial council, the administrative director of the courts shall provide staff and secretarial support for all functions of the judicial council.

\* \* \*

(d) The administrative director of the courts shall, within budgetary limitations, provide the judges of the trial courts of record with minimum law libraries, the nature and extent of which shall be determined in every instance by the administrative director on the basis of need. All books furnished shall remain the property of the state, and shall be returned to the custody of the administrative director by each judge upon the retirement or expiration of the official duties of such judge.

\* \* \*

(f)(1) The administrative director of the courts shall, within the limit of appropriated funds, prepare for the supreme court's approval an annual judicial education plan providing for the orientation and continuing training and education of all elected or appointed judges of trial and appellate courts of record of this state.

\* \* \*

(g) The administrative director of the courts shall continuously survey and study the operation of the state court system, the volume and condition of business in the courts of the state, whether of record or not, the

procedures employed by those courts, and the quality and responsiveness of all of the courts with regard to the needs of civil litigants and the needs of the criminal justice system throughout the state. The administrative director of the courts shall also provide liaison and staff support to the judicial council with regard to the responsibilities of the judicial council in the above areas. (h) The administrative director of the courts shall establish criteria, develop procedures and implement a Tennessee court information system (TnCIS). The system shall provide an integrated case management and accounting software system addressing the statutory responsibilities of the clerks of the general sessions, chancery, circuit, and juvenile courts. . . .

* * *

(i) For the purposes of monitoring the operation of the state court system, reducing unnecessary delay, and assessing the responsiveness of the state court system to the needs of litigants, victims of crime, and the citizens of the state, the administrative director of the courts shall have the responsibility for annually collecting, compiling, analyzing, and publishing caseload statistics pertaining to the state court system. It is the responsibility of the administrative director of the courts to develop, define, update, and disseminate standard, uniform measures, definitions, and criteria for collecting statistics pertaining to the state court system. These standards and reporting requirements shall be used for uniform statistical data collection in all of the courts throughout the state as established by the rules of the supreme court.

Tenn. Code. Ann. § 16-3-803.

After a review of the record, including affidavits from both parties regarding the injunction, the duties of the ADC, and the statutory relationship between the ADC and the Tennessee courts, including the juvenile courts, the district court held that,

the Administrative Director of the Courts of Tennessee acts 'in active concert or participation with' the courts of the State of Tennessee, including the juvenile judges who were responsible for implementing the judicial bypass procedure under the Consent Act. . . . From this review of the Administrative Director's duties, it is clear to the Court that the Administrative Director is in a privity relationship with the courts of the State of Tennessee.

(J.A. at 616-17.)

We do not believe the district court's conclusion was clearly erroneous. The relationship between the ADC and the courts of Tennessee demonstrates that the Tennessee courts were identified in interest with the ADC. The ADC is responsible for the orientation and continued education of the judges of the state courts and for the orderly operation of the court system. It naturally follows that the ADC would be responsible for educating the state court judges on injunctions prohibiting the enforcement of potentially unconstitutional statutes. And while the ADC does not have direct supervisory authority over the judges of the state courts, the ADC is responsible for assisting the chief justice of the Supreme Court, who does have such authority, with the administration of the state court system. Furthermore, the ADC is the "chief administrative officer of the state court system." Tenn. Code Ann. § 16-3-803. Based on the duties of the ADC, it was not clearly erroneous for the district court to conclude that the ADC and the state courts, including the juvenile courts, were in active concert and participation. In other words, the relationship between the ADC and the state courts demonstrates that there was an identity of interests or privity between the two. We consider a contrary conclusion to be misguided inasmuch as the judges of the court system have the actual power to enforce a statute, not the ADC, despite that he or she is the "chief administrative officer of the state court system." To enjoin the ADC without having that injunction reach the judges of the various courts would be